**Linda F. WILSON, Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 835, Docket 73-2820.**

United States Court of Appeals, Second Circuit.

Argued April 22, 1974.

Decided Aug. 6, 1974.

John H. Doyle, III, New York City (Anderson, Russell & Kill, P.C., New York City, on the brief, Eugene R. Anderson, and Howard N. Beldock, New York City, of counsel), for petitioner-appellant.

Louis A. Bradbury, Atty., Tax Div., Dept. of Justice, Washington, D.C. (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, and Gary R. Allen, Attys., Tax Div., on the brief), for respondent-appellee.

Before LUMBARD and HAYS, Circuit Judges, and JAMESON,* District Judge.

JAMESON, District Judge:

Petitioner-appellant, Linda F. Wilson, has appealed from (1) a decision of the Tax Court holding that there were tax deficiencies in the federal income tax of petitioner and William R. (Bob) Wilson for the years 1966 and 1967 in the amounts of $10,290.03 and $8,636.59, respectively; and (2) from an order denying petitioner's motions to vacate the decision and reopen the proceedings and her motion to substitute counsel.

Joint returns filed on behalf of Bob and Linda Wilson as husband and wife show that Bob's gross earnings as a news commentator were $67,401.69 in 1966 and $42,974.07 in 1967. He also received $1,571.76 and $1,300 from the Army Signal Corps. Linda's gross earnings as an actress were $3,915.55 in 1966 and $4,769.00 in 1967. Deductions claimed for travel, entertainment, gift and professional expenses in the amounts of $30,312.70 in 1966 and $31,023.79 in 1967 were disallowed, resulting in the deficiencies assessed by the Commissioner.

On November 19, 1970 a petition for redetermination of these deficiencies, bearing the signature of both Bob and Linda, was filed with the Tax Court. Petitioners were represented by Harold Newman, an attorney and certified public accountant, who had also prepared the tax returns. A trial was held on June 14, 1972, and the decision of the Tax Court sustaining the Commissioner's deficiency determination was entered on April 27, 1973.

* Senior District Judge of the District of Montana, sitting by designation.

On July 25, 1973 Linda presented to the Tax Court her motions (1) to withdraw Newman as counsel and substitute Howard N. Beldock, (2) to reopen the hearing and reconsider the court's decision, and (3) to vacate the decision. Supporting affidavits and a brief were also submitted. On July 26, 1973 the Tax Court granted petitioner leave to file her motions out of time. On August 20, 1973, in a "Memorandum Sur Order", the Tax Court denied each of the motions without a hearing. No opposing papers were filed by the Commissioner.

Bob and Linda were married in 1962. In an affidavit in support of her post decision motions, Linda states that she learned in 1971 that Bob was still married to another woman. She then commenced an action for annulment, and a decree of annulment was entered on January 12, 1973. Newman, the attorney for petitioners in the tax proceedings, represented Bob in the annulment action.

Petitioner alleged and contended in her motions that she should not be adjudged liable for the tax deficiencies because (a) she did not sign the 1966 and 1967 tax returns or authorize another to do so; (b) she was not shown the returns prior to their filing, was not aware of their contents and did not intend the returns to be joint returns; (c) her marriage to Bob was adjudged a nullity on the ground that he had been previously married, and the marriage had not been dissolved; and (d) she was not represented by independent counsel in the original Tax Court proceedings.

The Tax Court held that the motions were untimely and that even if the untimeliness were ignored, there was "persuasive authority for denying Linda's motions on the merits". Specifically, the Tax Court found that (1) Linda's statements in her affidavit "are, at best, questionable" and contrary to her testi-

mony in the Tax Court proceedings; (2) her contention that Newman did not adequately represent her interest is "weak"; and (3) while the annulment decree was entered in January, 1973, she made no effort to seek independent counsel or reopen the proceedings until July, 1973. The motions were denied without a hearing, although the Tax Court did consider the contents of the affidavits and the prior proceedings.

The critical issues on this appeal are (1) whether the question of timeliness was resolved in petitioner's favor when the Tax Court permitted the motions to be filed; (2) whether petitioner in her affidavit has shown "extraordinary circumstances" which justify remand for a hearing; and (3) whether the Tax Court should have considered the effect of Revenue Ruling 67–442, first raised by petitioner on this appeal.

### I.

The Tax Court ruled that Linda's motions were untimely because they were filed 58 days "after the expiration of the thirty day period allowed for timely filing of the motions to vacate and to reopen the proceedings" (citing Rules 19(e) and 19(f) of the Rules of Practice of the United States Tax Court).

Rule 19(e) provided:

"No motion for retrial, further trial, or reconsideration may be filed more than 30 days after the opinion has been served, *except by special leave*." (emphasis added.)

Rule 19(f) provided:

"No motion to vacate or revise a decision may be filed more than 30 days after the decision has been entered, *except by special leave*." (emphasis added.) [1]

The Tax Court by granting petitioner leave to file the motions out of time brought the motions within the exceptions to the 30-day limitation. More-

---

1. Rules 19(e) and 19(f) have now been incorporated as Rules 161 and 162 respectively in the new Rules of Practice and Proce-

dure of the United States Tax Court, effective January 1, 1974.

over, in ruling on the motions on the merits the Tax Court considered the affidavits filed in support of the motions. Under these circumstances reliance on Rules 19(e) and 19(f) did not afford an adequate basis for denying the motions without a hearing.[2]

## II.

■ Having authorized the filing of the motions, the Tax Court was obliged to consider all relevant facts and law and to exercise its sound discretion in either granting or denying the motions. See Sisto Financial Corp. v. Commissioner, 149 F.2d 268, 270 (2 Cir. 1945); Weiller v. Commissioner, 64 F.2d 480, 482 (2 Cir. 1933). As indicated, the Tax Court, considering the contents of petitioner's affidavits and the record of the tax proceedings, denied the motions without a hearing.

■ This court on review may reverse a discretionary denial by the Tax Court of post-opinion motions only if there are shown to be "extraordinary circumstances" justifying reversal. Pepi, Inc. v. C.I.R., 448 F.2d 141, 148 (2 Cir. 1971). Petitioner contends that she has shown "extraordinary circumstances" in that (1) she had no intent to file joint tax returns with Bob in 1966 or 1967; (2) since Newman was representing Bob in the annulment litigation at the same time he represented Bob and Linda in the tax matter, a conflict of interest existed which resulted in Newman's failure to properly represent Linda's interests during the tax proceedings; and (3) her marriage was annulled after the Tax Court hearing was completed.

With regard to Linda's first contention, we agree with the Tax Court that the statements contained in Linda's affidavit concerning her intent to file joint tax returns with Bob in 1966 and 1967 "are, at best questionable". Even though she did not sign the joint return, she did not file a separate return; her independent income was included in the joint return; she gave her husband material for use in claiming substantial deductions; and she joined in the petition to the Tax Court filed on November 19, 1970. At the hearing she testified in detail with respect to deductions claimed in the joint return. She was obviously a willing witness for petitioners and somewhat antagonistic toward counsel for the Commissioner.

There is apparently merit, however, in Linda's second contention that Newman did not properly represent her interests in the tax proceedings. In her affidavits in support of the motions, Linda stated that she realized at the time of the tax hearing that she should have independent counsel. While this appears inconsistent with her obvious cooperation with Newman in presenting petitioners' case, it is significant that at the outset Linda volunteered the statement: "There is one thing I want to say: At the time we filed in '66 and '67 I understood I was married to Bob Wilson. There is litigation in court as to the legality of the marriage." Newman commented that he did not think that was "relevant".

Linda's statement to the court would indicate that she was concerned with the legality of her marriage as it related to the tax proceedings. It seems probable that independent counsel would have advised Linda as to the effect of Revenue Ruling 67–442[3] and would have apprised

---

2. The motions were filed within 90 days and before the decision of the Tax Court became final under Section 7481 of the 1954 Code. In this respect McCarthy v. Commissioner, 139 F.2d 20 (7 Cir. 1943), relied upon by the Tax Court, is distinguishable.

3. Under Revenue Ruling 67–442, ". . . where a state court, in a proceeding in which there is personal jurisdiction or juris-

diction of the subject matter of the action, declares a prior divorce to be invalid, the [Internal Revenue] Service will usually follow the later court decision rather than the [prior] divorce decree for Federal income tax purposes . . .". In this regard the Service "will not follow" two decisions of this court—Estate of Borax v. Commissioner of Internal Revenue, 349 F.2d 666 (1965) cert. denied, 383 U.S. 935, 86 S.Ct. 1064, 15

the court of the annulment proceedings and the probable effect of the ruling. For Newman to have raised this issue would have been detrimental to his client Bob. This obvious conflict of interest and lack of independent counsel may explain why the annulment proceedings and its possible effects were not brought to the attention of the Tax Court prior to its decision on April 27, 1973.

In light of the annulment and Revenue Ruling 67–442, Newman's conflict of interest and Linda's lack of independent counsel present a serious issue. Whether Linda had a reasonable excuse for failing to seek advice from an independent counsel earlier is a question of fact. We recognize that it is the province of the Tax Court to decide questions of fact. Home Co. v. C.I.R., 212 F.2d 637, 639 (10 Cir. 1954). Tax Court determinations of factual issues may only be overturned for lack of substantial evidence or if they are "clearly erroneous". *Id.* "If a substantial basis is lacking the appellate court may then indulge in making its own conclusions or it may remand the case to the Tax Court for further appropriate proceedings." Commissioner of Internal Revenue v. Scottish American Co., 323 U.S. 119, 124, 65 S.Ct. 169, 171, 89 L.Ed. 113 (1944).

Except for the petitioner's self-serving statement in her affidavit, the Tax Court had no direct evidence before it regarding petitioner's reasons for failing to consult independent counsel. The record of the Tax Court trial does not present a sufficient basis to draw a conclusion either way. The petitioner may at a hearing present further evidence to explain her failure to seek the advice of independent counsel and raise the annulment issue prior to the Tax

Court's decision. We conclude, therefore, that justice requires (see 26 U.S.C.A. § 7482(c)(1)) that she be given an opportunity to do so and that "extraordinary circumstances" justify a remand to the Tax Court for an evidentiary hearing.

### III.

Finally, the petitioner raises for the first time on appeal a legal defense to the Tax Court's decision finding her and Bob jointly and severally liable for the tax deficiencies. She contends that Revenue Ruling 67–442 requires that the returns be treated as individual rather than joint and that in the "interests of justice", the applicability of the ruling should be considered by the Tax Court.

As a general rule a "reviewing court should pass by, without decision, questions which were not urged" before the Tax Court; but the cases stating this principle "do not announce an inflexible practice, as indeed they could not without doing violence to the statutes which give to Circuit Courts of Appeal reviewing decisions of the [Tax Court] the power to modify, reverse or remand decisions not in accordance with law 'as justice may require.' " Hormel v. Helvering, 312 U.S. 552, 556–557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941).

We conclude that the issue with respect to the applicability of Revenue Ruling 67–442 should be resolved in the "interests of justice". This involves factual as well as legal determinations which should be made in the first instance by the Tax Court. See Road Materials, Inc. v. C.I.R., 407 F.2d 1121, 1125–1126 (4 Cir. 1969).

Reversed and remanded for further proceedings consistent with this opinion.

L.Ed.2d 852 (1966), and Wondsel v. Commissioner of Internal Revenue, 350 F.2d 339

(1965), cert. denied 383 U.S. 935, 86 S.Ct. 1064, 15 L.Ed.2d 852 (1966).