FOSTER R. BREWER AND DOROTHY B. BREWER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brewer v. Commissioner
Docket Nos. 11590-86; 11067-87
United States Tax Court
T.C. Memo 1989-578; 1989 Tax Ct. Memo LEXIS 564; 58 T.C.M. (CCH) 493; T.C.M. (RIA) 89578; October 26, 1989
John E. S. Kramar and Don H. Martin, Jr., for the petitioners. Albert A. Balboni, for the respondent. WHALEN
MEMORANDUM OPINION WHALEN, Judge: These consolidated cases were tried in Houston, Texas on May 17, 1989. They involve two notices of deficiency in which respondent determined the following deficiencies in and additions to petitioners' Federal income tax: Additions to Tax Pursuant to
Taxable
Income Tax
I.R.C. Sections
Year
Deficiency
6651(a)(1) [1]
6653(a)(1)
6653(a)(2)
6661
1981
$ 116,327.92
$ 29,081.98
$  5,816.40 *
--
1982
250,326.00
62,582.00  12,854.00 *
$ 62,582.00
*565 The cases now come before us now to decide two motions, Motion For Leave to File Second Amended Petition, and Motion to Open Record, filed by petitioners after trial. At trial, petitioners presented evidence relating to a loan transaction entered into by Mr. Brewer in the course of his business as an independent insurance agent. In summary, Mr. Brewer sold two life insurance policies in 1981 to a corporation, Mechanical Systems, Inc., covering the lives of two key officers of the corporation, one of whom, the principal officer of the corporation, was also a close personal friend. Mr. Brewer paid the net premiums due on the policies for the first year, $ 240,287.68, and received a promissory note from Mechanical Systems, Inc. in the amount of the gross premiums, $ 391,900. To pay the initial premiums, Mr. Brewer borrowed funds in the form of two separate loans, on which he incurred interest charges at the annual rate of 15.75 percent and 17 *566 percent, respectively. The stated interest rate in the promissory note received from Mechanical Systems, Inc. was 1 percent. Petitioners argued at trial that they had incurred an ordinary and necessary business expense by advancing the cost of the insurance premiums to Mechanical Systems, Inc. and they are entitled to a deduction under section 162 in 1981 for that amount. They further argued, in the alternative, that they are entitled to a business bad debt deduction under section 166 in 1984 equal to their basis in the promissory note on the ground that it was never paid by Mechanical Systems, Inc. and became worthless in that year. Petitioners asserted that such bad debt deduction in 1984 created or increased a net operating loss which can be carried back to 1981. At the conclusion of the trial, the Court closed the record in the case and commented extensively on the evidence. The Court made clear its preliminary view that petitioners are not entitled to deduct, under section 162, the cost of the insurance premiums which Mr. Brewer advanced to Mechanical Systems, Inc. in 1981. As presented by petitioners, the transaction constituted a loan for which Mr. Brewer took a promissory *567 note from Mechanical Systems, Inc. and expected to be repaid; the transaction did not constitute a discount on, or rebate of, insurance premiums. The Court noted that it was not necessary to reach the issue of whether the transaction constituted an insurance rebate scheme, as argued by respondent. The Court further made clear its view that petitioners had not established the worthlessness of the note from Mechanical Systems, Inc. as of the end of 1984. The evidence showed that Mechanical Systems, Inc. continued to operate its business until 1987, and petitioners never took any action to collect the obligation or to establish its worthlessness. Petitioners now ask the Court for leave under Rule 41[2] to amend their petition. They seek to allege that the promissory note accepted from Mechanical Systems, Inc. was unenforceable under Texas law under one of two theories: first, because the transaction "may have constituted" an unlawful rebate of insurance premiums and, second, because the note is usurious. Under either theory, petitioners seek to claim a loss deduction under section 165 for 1981 in the amount of $ 391,000 391,900, the face amount of the promissory note received from *568 Mechanical Systems, Inc. *569 Petitioners also ask the Court to reopen the record in this case to allow them to present evidence necessary to establish that the note obtained from Mechanical Systems, Inc. was usurious under Texas law and, therefore, unenforceable. They do not ask to introduce evidence that the loan transaction constituted an illegal rebate of insurance premiums. At trial, respondent introduced such evidence and argued that any payment made by petitioner in connection with the rebate scheme is an illegal payment and is not deductible under section 162 by reason of subsection (c) thereof. Petitioners apparently intend to use respondent's proof of an unlawful rebate scheme to support their argument that the promissory note is not enforceable and is a loss under section 165. The Rules of this Court require petitioners to set forth in their petition a clear and concise assignment of each and every error alleged to have been committed by the Commissioner in his determination of the deficiency or liability at issue, and clear and concise statements of the facts on which they base the assignment of error. *570 Rule 34(b)(4) and (5). The Court will not consider issues which are not raised by the pleadings. Foley Machinery Co. v. Commissioner, 91 T.C. 434, 441 (1988); Estate of Mandels v. Commissioner, 64 T.C. 61, 73 (1975). As the pleadings in this case now stand, petitioners are not claiming eligibility for a loss deduction under section 165. In effect, petitioners request permission to amend their petition after trial to place that contention at issue. At the outset, we note petitioners' contention that the loss deduction issue under section 165 was "tried by consent" within the meaning of Rule 41(b) and therefore an amendment of the petition is necessary only to conform the pleadings to the evidence. In support of this contention, petitioners allege, "At trial, counsel for the Respondent expressly raised the issue as to the enforceability of this debt and, consequently, the question as to whether the Petitioners incurred a deductible loss within the meaning [of] Code Section 165." To the contrary, as mentioned above, respondent's counsel asserted at trial that the transaction constituted an illegal rebate of insurance premiums under Texas *571 law, and that any funds paid by petitioners in connection with the transaction are illegal payments and are not deductible under section 162 by reason of subsection (c). Respondent never took the position at trial that the promissory note was unenforceable. In our view, respondent's position that the transaction constituted an illegal rebate scheme does not necessarily raise an issue about the enforceability of the promissory note under Texas law. See generally Tex. Ins. Code Ann. art. 21.21 (Vernon 1981), and the sanctions for violation of the premium rebate law contained therein. Even if we were to assume that respondent's position cast doubt on the enforceability of the note by implication, we cannot accept petitioners' premise that respondent intended to place petitioners' entitlement to a loss deduction under section 165 at issue when he raised the issue of the illegal nature of Mr. Brewer's payments of the insurance premiums for purposes of section 162(c). Petitioners never expressly placed respondent on notice that they claimed a loss deduction under section 165 in their trial memorandum or opening statement, or at any other time. In fact, the opposite is true. Petitioners *572 argued at trial that the promissory note from Mechanical Systems, Inc. was a valid debt which became a bad debt in 1984. The concept of a bad debt deductible under section 166, and the concept of a loss deductible under section 165, are mutually exclusive. Spring City Co. v. Commissioner, 292 U.S. 182, 189 (1934). The distinction between the two is described in Tharp v. Commissioner, T.C. Memo. 1972-10, the only case cited by petitioners, as follows: It has long been settled law that losses and bad debts are mutually exclusive, and that a bad debt loss is deductible according to the rules of section 166 or not at all. This point was settled as early as 1934 when the Supreme Court held in Spring City Co. v. Commissioner, 292 U.S. 182 (1934) that a single transaction could not qualify as a bad debt and a loss. The Court construed the predecessors to sections 165 and 166 in the following manner: The making of the specific provision as to debt indicates that these were to be considered as a special class and that losses on debts were *573 not to be regarded as falling under [section 165]. What was excluded under [section 166] cannot be regarded as allowed under [section 165]. [Emphasis supplied; 31 T.C.M. 22, 24, 41 PH Memo par. 72,010 (1972).] Petitioners' position at trial, therefore, carried the implication that they did not claim a loss deduction under section 165. Thus, respondent was not aware of the loss issue at trial, and he cannot be held to have expressly or impliedly consented to the trial of such issue, as required for application of Rule 41(b). See Markwardt v. Commissioner, 64 T.C. 989, 998 (1975). Petitioners also invoke Rule 41(a) as authority for granting their motion for leave to amend the petition to place section 165 at issue. They emphasize that Rule 41(a) states, "leave shall be given freely when justice so requires." At the outset, we note that the purpose of the pleadings is to give the parties and the Court fair notice of the matters in controversy and the basis of their respective positions. Rule 31(a). In applying the "given freely" standard *574 set out in Rule 41(a) for amendment of the pleadings, we must take into consideration the competing interests of the parties. On the one hand, the movant of an amendment has an interest in presenting the facts and legal theories which he believes should be considered by the Court in reaching its decision. The party opposing an amendment, on the other hand, has an interest in knowing the facts and legal theories to be relied upon by the other side at trial so that he can prepare to present his case to the Court. As the case moves closer to trial, the interest of the opposing party in preserving the state of the pleadings becomes greater due to the surprise and prejudice which an amendment of them may cause the opposing party in presenting his case. See generally 6 C. Wright & A. Miller, Federal Practice and Procedure, Civil, sec. 1488 (1971). Once the case has been tried, a motion to amend the pleadings, such as petitioners' motion in this case, seems anomalous in light of the underlying purpose of pleadings, to give notice to the opposing party and to the Court of the issues to be tried. Nevertheless, Rule 41(a) imposes no time limit on such motions, except that no amendment *575 will be permitted after the time for filing the petition has expired which would confer jurisdiction on the Court. Moreover, Rule 41(a), like Rule 15(a) of the Federal Rules of Civil Procedure, from which it is derived, reflects a "liberal attitude" toward the amendment of pleadings. See 60 T.C. 1089. Therefore, a motion to amend the pleadings made after trial must nevertheless be considered. See Foman v. Davis, 371 U.S. 178, 182 (1962); Woodfork v. Marine Cooks & Stewards Union, 642 F.2d 966, 976 (5th Cir. 1981). In Foman v. Davis, supra at 182, the Supreme Court considered the "freely given" standard of Rule 15(a) of the Federal Rules of Civil Procedure, and stated as follows: Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. See generally, 3 Moore, Federal Practice (2d ed. 1948), PP15.08, 15.10. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test *576 his claim on the merits. In the absence of any apparent or declared reason -- such an undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules. As the above passage suggests, in considering a motion for leave to amend the pleadings, we are required to take into account any prejudice that would be suffered by the opposing party. See Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330-331 (1971). We may also take into account, as a ground for refusing to permit amendment, the fact that the movant was acting in bad faith or with a dilatory motive, Zenith Radio Corp. v. Hazeltine Research, Inc., supra at 332; *577 Earlie v. Jacobs, 745 F.2d 342, 345 (5th Cir. 1984), or the fact that the movant's actions lacked diligence, for which he failed to show some valid reason. Freeman v. Continental Gin Co., 381 F.2d 459, 469 (5th Cir. 1967). For this purpose, we may take into consideration, as a form of prejudice to respondent, the fact that a new trial will be required and respondent would be forced to incur the delays and costs of an additional proceeding. See Zenith Radio Corp. v. Hazeltine Research, Inc., supra at 331; Markwardt v. Commissioner, supra at 998. As discussed above, respondent proceeded to trial without notice of petitioners' claim of loss deduction under section 165. Because of the inherently factual nature of petitioners' claim, we cannot grant their motion for leave to amend their petition to raise the claim in this case without also giving respondent an opportunity to meet it in a new trial. Otherwise, it would be patently unfair to respondent for us to decide the case on a theory about which he was unaware and did not have an opportunity to meet at the evidentiary stage. Cf. Baird v. Commissioner, 438 F.2d 490, 493 (3d Cir. 1970), *578 vacating T.C. Memo. 1969-67. Turning to petitioners' motion to reopen the record, this Court, like other courts, does not favor post-trial motions for a new or further hearing. See, e.g., Edgar v. Finley, 312 F.2d 533, 536-537 (8th Cir. 1963). Our predecessor, the Board of Tax Appeals, early announced the policy, which we have followed, of requiring all issues to be raised in one proceeding in order to avoid piecemeal and protracted litigation. Pierce Oil Corp. v. Commissioner, 30 B.T.A. 469, 475 (1934); Robin Haft Trust v. Commissioner, 62 T.C. 145, 147 (1974), affd. on this issue 510 F.2d 43 (1st Cir. 1975). New and further hearings are allowed, from time to time, in peculiar or extraordinary circumstances. E.g., Wilson v. Commissioner, 500 F.2d 645 (2d Cir. 1974), revg. and remanding an order of this Court; Kelley v. Commissioner, 877 F.2d 756, 760-761 (9th Cir. 1989), revg. T.C. Memo. 1986-405. However, the general rule is that this Court will refuse to *579 grant a new trial where there is no showing that the evidence was not available in ample time for presentation at the first hearing. Bankers' Pocahontas Coal Co. v. Burnet, 287 U.S. 308, 313 (1932); George v. Commissioner, 844 F.2d 225, 229-230 (5th Cir. 1988); cf. BASF Wyandotte Corp. v. Commissioner, 532 F.2d 530, 540-541 (6th Cir. 1976). Moreover, we do not ordinarily grant a second trial to consider a new theory which could or should have been presented at the first trial. Markwardt v. Commissioner, supra at 998; cf. Pierce Oil Corp. v. Commissioner, supra at 475. The only ground petitioners advance in support of both their Motion to File Second Amended Petition and their Motion to Open Record is that the relief is necessary "to assert an alternative theory of law which will have a material effect on the calculation of the petitioners' 1981 taxable income." They offer no explanation for their failure to raise such "alternative theory of law" during the original trial. Indeed, petitioners' failure is inexcusable and both motions must be denied. See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc., supra; *580 Freeman v. Continental Gas Co., supra.
The ultimate facts which petitioners now seek to advance, that the promissory note they received from Mechanical Systems, Inc. was usurious or was part of an insurance rebate scheme, are not new to this case at all. Approximately 18 months prior to the trial in this case, respondent sought and received permission to amend his answer to affirmatively allege that the transaction at issue involved an illegal rebate of insurance premiums with the result that no deduction is allowable under section 162(c). Petitioners did not reply to the amended answer but respondent's affirmative allegations were deemed denied by them pursuant to Rule 37(c). Respondent then sought to establish that the transaction constituted an illegal rebate of insurance premiums in his Request for Admissions served on March 1, 1989. Paragraph 14 of Respondent's Request For Admissions states as follows: The premiums paid by petitioner Foster Brewer in 1981 for John Goss and William Morrow in the total amount $ 237,471.56 constitute a form of rebate specifically prohibited by Article 21.21, Sec. 7(a) and (b) of the Texas Insurance Code. Petitioners *581 did not timely respond to respondent's request for admissions and the truth of such matters was deemed admitted by petitioners pursuant to Rule 90(c). Two weeks before trial, petitioners filed a motion to withdraw or modify their admissions and lodged their responses to the admissions. Paragraph 14 thereof states that the payment of premiums by Mr. Brewer "does not constitute a rebate, but rather a cost of good[s] sold or a premium financing." Petitioners' motion was argued before the Court on the eve of trial and, over respondent's objection, petitioners were granted leave to withdraw or amend such admissions. Similarly, the application of the Texas usury laws to the transaction at issue was also specifically addressed prior to trial. Paragraph 23 of the stipulation of facts filed by the parties states as follows: Petitioner, Foster R. Brewer, was duly licensed as a local recording agent in the State of Texas during the taxable year 1981. As a local recording agent, Mr. Brewer was permitted by the Texas Insurance Code to finance insurance premiums as long as the interest rate charged did not violate any Texas usury laws. Attached hereto and made a part hereof is a copy *582 of Mr. Brewer's local recording agent license for the applicable period, marked Joint Exhibit 18-R. [Emphasis supplied.] The parties also stipulated that article 24.20 of the Texas Insurance Code (Vernon 1981) provided: Notwithstanding any other provision of law, any person, partnership, or corporation duly licensed as a local recording agent under Article 21.14, Insurance Code, as amended, may enter into or establish a written agreement with any purchaser of insurance from the agent providing for the payment of interest to the agent in an amount not to exceed the greater of a rate allowed by Article 1.04 of this Title [footnote reference omitted] or the rate of one percent a month, on any amount due and owing to the agent for insurance purchased by the purchaser. In those instances the claim or defense of usury is prohibited. [Emphasis supplied.] It is clear that the effect of both the Texas insurance premium rebate law and the Texas usury law on the subject promissory note, and the possible unenforceability of the note, were matters before the Court at the time of the *583 original trial. Nevertheless, petitioners' position at trial was that the note was enforceable and that the payments made by petitioners were deductible in 1981 as an ordinary and necessary business expense under section 162 or in 1984 as a business bad debt under section 166. We note that the latter position was advanced by petitioners only several months before trial in a motion for leave to amend the petition, which we granted over respondent's objection. Petitioners could have taken the position at trial that they incurred a deductible loss in 1981 but they chose not to do so. One possible explanation is that they intentionally decided not to argue that Mr. Brewer engaged in an illegal rebate scheme or that he structured a usurious transaction. However, now that the case has been tried and the Court has expressed its view on the record that the premium payments are not deductible under section 162, petitioners boldly seek to argue that the promissory note was unenforceable and constituted a loss under section 165. We do not believe that "justice so requires." In further support of our denial of petitioners' motions, we note that petitioners failed to timely respond to formal *584 discovery issued by respondent in the form of interrogatories, served on January 20, 1988, and February 14, 1989, and in the form of requests for production of documents, served on February 1, 1988, and February 28, 1989. Respondent's motions to impose sanctions based on petitioners' violation of this Court's discovery rules were the subject of a pre-trial conference and were taken under advisement at that time. We also note that the Court issued an order requiring petitioners to show cause why certain facts to which they refused to stipulate should not be deemed admitted for purposes of this case. That order was discharged when the parties jointly moved to continue the case in order to consider an offer in compromise. Similarly, as mentioned above, petitioners failed to timely respond to a request for admissions. The Court allowed petitioners to modify their admissions, but did so "reluctantly" and only because " there has been a fair amount of conversation about the case, and I think Respondent is aware of what the issues are." It appears that petitioners sought to block or stymie all reasonable discovery efforts of respondent. They failed to engage in voluntary discovery *585 as required by our Rules and then failed to timely respond to the formal discovery which respondent was required to initiate. At the same time, petitioners continued to change their position. They sought and were permitted to amend their petition before trial on two other occasions, one of which they withdrew. They also allowed admissions to be deemed made and then withdrew them shortly before trial. Respondent's frustration was evident in his trial memorandum when he made reference to "petitioners' ever-changing rendition of the facts." After reviewing petitioners' post-trial motions in light of the other pleadings in this case, we conclude that their conduct in this case has not been in good faith and that the subject motions must be denied. Petitioners' Motion for Leave to File Second Amended Petition and Motion to Open Record will be denied. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended. All Rule references are to the Tax Court Rules of Practice and Procedure. * 50% of the interest due on the underpayment.↩
2. Rule 41 provides in relevant part: (a) Amendments: A party may amend his pleading once as a matter of course at any time before a responsive pleading is served. If the pleading is one to which no responsive pleading is permitted and the case has not been placed on a trial calendar, he may so amend it at any time within 30 days after it is served. Otherwise a party may amend his pleading only by leave of Court or by written consent of the adverse party; and leave shall be given freely when justice so requires. No amendment shall be allowed after expiration of the time for filing the petition, however, which would involve conferring jurisdiction on the Court over a matter which otherwise would not come within its jurisdiction under the petition as then on file. A motion for leave to amend a pleading shall state the reasons for the amendment and shall be accompanied by the proposed amendment. See Rules 36(a) and 37(a) for time for responding to amended pleadings. (b) Amendments to Conform to the Evidence: (1) Issues Tried by Consent: When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. The Court, upon motion of any party at any time, may allow such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues, but failure to amend does not affect the result of the trial of these issues. (2) Other Evidence: If evidence is objected to at the trial on the ground that it is not within the issues raised by pleadings, the Court may receive the evidence and at any time allow the pleadings to be amended to conform to the proof, and shall do so freely when justice so requires and the objecting party fails to satisfy the Court that the admission of such evidence would prejudice him in maintaining his position on the merits. (3) Filing↩: The amendment or amended pleadings permitted under this paragraph (b) shall be filed with the Court at the trial or shall be filed with the Clerk at Washington, D.C., within such time as the Court may fix.