T.C. Memo. 1997-550


UNITED STATES TAX COURT


GEORGE C. SCRIMSHAW AND ERNA C. SCRIMSHAW, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3195-82.                    Filed December 16, 1997.


<u>Richard Stephen Kestenbaum</u>, <u>John M. Kemp</u>, and <u>Bridget</u>
<u>Mcinerney Harris</u>, for petitioners.[1]

<u>Edward O.C. Ord</u> and <u>Christian M. Winther</u>, for petitioner
Erna C. Scrimshaw.

<u>Allan D. Hill</u>, for respondent.


----

[1]    Although <u>Richard Stephen Kestenbaum</u>, <u>John M. Kemp</u>, and
<u>Bridget Mcinerney Harris</u> are listed as counsel of record, they
did not participate in the filing or prosecuting of the motion
that is the subject of this opinion.

MEMORANDUM OPINION

JACOBS, Judge: This case is before the Court on the motion of Erna C. Scrimshaw (hereinafter petitioner when used in the singular) for leave to file a motion to vacate decision entered on July 26, 1991. Petitioner's motion to vacate decision is based upon the theory that the stipulated decision entered in petitioners' case was the result of fraud on the Court because her signature on the decision document is a forgery. In her motion, petitioner requests, among other things, that she be allowed to amend the pleadings in order to raise the defense of "innocent spouse". Respondent filed a response in opposition to petitioner's motion. As explained below, we shall deny petitioner's motion.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the matter under consideration. All Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioner and George C. Scrimshaw (collectively referred to as petitioners) were husband and wife and resided in Orinda, California, at the time the petition was filed.

## Background

Petitioners were married on September 14, 1957. Petitioner worked as a registered nurse, and her husband was a physician. In 1962, after the birth of petitioners' first child, petitioner

remained at home to take care of their children until January 1987, when she resumed her nursing career.

Petitioners filed joint Federal income tax returns for years 1975 through 1979. On December 3, 1981, respondent sent petitioners a notice of deficiency regarding these years. Pursuant to the notice of deficiency, respondent disallowed losses and deductions petitioners claimed on their 1975-79 returns and determined negligence additions to tax for 1976-79. Respondent's adjustments were made with regard to the losses and deductions petitioners claimed for 1975-79, arising from transactions involving: (1) Investors Mining Program 77-5 in 1977 and 1978; (2) commodity options and futures contracts with Gardner Lohmann Limited and Amalgamated Metal Trading Limited in 1976 and 1977;[2] and (3) investments with Six Star Cablevision Management Corp. in 1978 and 1979. (Petitioners' 1975 tax year was involved because of the disallowance of an investment credit claimed to have been generated in 1979 and carried back to 1975.)

On February 12, 1982, petitioners filed a petition in this Court, disputing respondent's adjustments in the notice of deficiency and claiming that the period of limitations had expired for petitioners' 1975-77 tax years.

---

[2] Respondent and the Court treated the options and futures contracts with Gardner Lohmann Limited and Amalgamated Metal Trading Limited as part of the "London Options" tax shelter project.

On March 22, 1982, petitioner filed a petition for divorce with the Superior Court of California, Contra Costa County.[3]

On April 8, 1982, respondent's answer in the proceeding before this Court was filed. Petitioners did not file a reply to the answer. Accordingly, on May 20, 1982, respondent filed a Motion for Entry of Order that Undenied Allegations in Answer Be Deemed Admitted. On June 23, 1982, we granted that motion.

On February 3, 1986, a Stipulation of Settled Issues was filed with this Court relating solely to petitioners' investment in the Investors Mining Program 77-5. It was signed by petitioner, Dr. Scrimshaw, their then attorney, and an Internal Revenue Service (IRS) special trial attorney. On March 12, 1987, a Stipulation of Settlement relating solely to that investment was filed with the Court, signed by petitioner, Dr. Scrimshaw, their then attorney, and Assistant District Counsel in New York. Petitioner read, reviewed, and signed these documents.

On October 5, 1990, respondent prepared computations of petitioners' 1975-79 tax liability, reflecting the following changes to the adjustments made in the notice of deficiency: (1) On their 1978 and 1979 tax returns, petitioners claimed losses of $36,032.00 and $16,118.00, respectively from their investment in

_____

[3] In the divorce settlement, Dr. Scrimshaw was awarded petitioners' interests in Investors Mining Program 77-5 and Cable TV-Tele Communications as his separate property "subject to all liens, encumbrances, assessments and/or tax liabilities which Respondent [Dr. Scrimshaw] shall pay and hold Petitioner [Mrs. Scrimshaw] harmless thereon."

Six Star Cablevision Management Corporation that were disallowed in the statutory notice of deficiency. As part of the computation, petitioners were entitled to claim a loss of $12,750.00 in 1978; (2) The adjustments in the notice of deficiency for options and futures transactions with Gardner Lohmann Limited and Amalgamated Metal Trading Limited were computed based upon the Court's opinion in the case of Glass v. Commissioner, 87 T.C. 1087 (1987), affd. sub nom. Keane v. Commissioner, 63 AFTR2d 89-622, 89-1 USTC par. 9134 (9th Cir. 1989) (also affirmed in five other Courts of Appeals); (3) The Investors Mining Program 77-5 adjustments were computed based upon the Stipulation of Settlement executed in the name of Erna C. Scrimshaw, George C. Scrimshaw and petitioners' then attorney; and (4) Respondent conceded the negligence additions determined for 1976 through 1979.

On June 20, 1991, the IRS District Counsel's office in New York mailed petitioners a decision document[4] based upon the October

---

[4] The decision document states as follows:

> Pursuant to the agreement of the parties in the above-entitled case, it is
>
> ORDERED AND DECIDED: That there are deficiencies in income tax due from the petitioners for the taxable years 1975, 1976, 1977, 1978 and 1979 in the amounts of $1,929.00, $6,448.00, $5,476.00, $11,776.00 and $8,582.00, respectively;
>
> That there are no additions to tax due from the petitioners for the taxable years 1976, 1977, 1978, and 1979 under the

(continued...)

5, 1990, computations.  The decision document was prepared in accordance with the agreement reached by the parties.  On July 18, 1991, Dr. Scrimshaw mailed the signed decision document back to the District Counsel's office.

The stipulated decision was entered by the Court on July 26, 1991. The second page of the stipulated decision bears the putative signatures for petitioner and Dr. Scrimshaw.  However, petitioner did not sign this document, and it is unclear from the record who did.[5]

On December 2, 1992, the IRS placed a tax lien on petitioner's house.  In 1993, the IRS withheld a 1992 tax refund due petitioner and applied it to the 1975 deficiency.  In 1994, the IRS placed a freeze on petitioner's bank accounts, which was lifted only after petitioner entered into an installment agreement with the IRS.  And currently, the IRS has placed a levy on her wages.

Petitioner filed an Offer in Compromise with the IRS, which was rejected.  It was in the preparation of the Offer in Compromise that petitioner, through her representative, realized that the signature that purported to be hers on the stipulated decision document was not hers in fact.

---

[4](...continued)
provisions of I.R.C. sec. 6653(a).

[5]    The parties agree that Richard Kestenbaum, petitioners' then counsel, did not sign petitioner's name to the July 26, 1991, stipulated decision.

On April 16, 1996, petitioner's motion for leave to file a motion to vacate decision was filed and an accompanying motion to vacate decision and memorandum in support was lodged. On May 6, 1996, respondent's response to petitioner's motion was filed.

On March 4, 1997, the Court issued an Order which noted in the preamble that even if petitioner did not sign the stipulated decision that alone would not be sufficient to require vacating the decision; petitioner must show that a different decision might have been entered if the earlier decision were vacated. The Order provided petitioner an opportunity to show a meritorious claim which was precluded by the alleged fraudulent act. In this regard, the Order required:

> That, on or before May 5, 1997, the parties shall serve on each other and file with the Court detailed offers of proof, setting forth those facts that the parties would offer in evidence at a hearing on the pending motions of Erna C. Scrimshaw, including a list of all witnesses to be called at such hearing, identified by name, address, and a brief description of anticipated testimony of such witness, and attaching copies of all documents to be offered in evidence at such hearing.

On May 8 and 9, 1997, the parties' offers of proof were filed. On August 6, 1997, we held a hearing on petitioner's motion.

## Discussion

The date of a decision of this Court is the date an order specifying the amount of the deficiency is "entered" in the records of the Court, which, in this case, was July 26, 1991. Sec. 7459(c). A decision of this Court becomes final upon expiration of the time to file a notice of appeal if no notice of appeal is

filed.  Sec. 7481(a)(1).  A notice of appeal must generally be filed within 90 days after the decision is entered by this Court. Sec. 7483; Fed. R. App. P. 13(a).  A motion to vacate or revise a decision must be filed within 30 days after the decision is entered unless the Court "shall otherwise permit".  Rule 162.  A motion to vacate a decision, filed more than 30 days after entry of the decision, may be filed only by leave of the Court, usually by the granting of a motion for leave to file an untimely motion to vacate.[6]  The granting of such a motion for leave to file a motion to vacate, or the granting of a timely motion to vacate, lies within the sound discretion of this Court.  Heim v. Commissioner, 872 F.2d 245, 246 (8th Cir. 1989), affg. T.C. Memo. 1987-1.

Once a decision becomes final, this Court may vacate the decision only in certain narrowly constricted situations. Helvering v. Northern Coal Co., 293 U.S. 191, 193 (1934).  For instance, the Court may vacate a final decision if that decision is shown to be void, or a legal nullity, for lack of jurisdiction over the subject matter or a party, see Billingsley v. Commissioner, 868 F.2d 1081, 1084-1085 (9th Cir. 1989); Abeles v. Commissioner, 90

---

[6]     Petitioner did not file a notice of appeal or a timely motion to vacate or revise the stipulated decision that was entered in this case on July 26, 1991.  Consequently, because that decision became final on Oct. 24, 1991, petitioner was required to file a motion for leave to file a motion to vacate the stipulated decision entered in this case.  Petitioner's motion for leave to file a motion to vacate decision entered on July 26, 1991, was filed on Apr. 16, 1996, almost 5 years after the Court entered the decision in this case.

T.C. 103, 105-106 (1988); Brannon's of Shawnee, Inc. v. Commissioner, 71 T.C. 108, 111-112 (1978), or if the decision was obtained through fraud upon the Court, see Abatti v. Commissioner, 859 F.2d 115, 118 (9th Cir. 1988), affg. 86 T.C. 1319 (1986); Senate Realty Corp. v. Commissioner, 511 F.2d 929, 931 n.1 (2d Cir. 1975); Stickler v. Commissioner, 464 F.2d 368, 370 (3d Cir. 1972).

General principles of contract law govern the compromise and settlement of tax cases. Robbins Tire & Rubber Co. v. Commissioner, 52 T.C. 420, 435-436, supplemented by 53 T.C. 275 (1969). Where a decision is entered pursuant to a stipulated settlement, the parties are usually held to their agreement without regard to whether the decision is correct on the merits. Stamm Intl. Corp. v. Commissioner, 90 T.C. 315, 321-322 (1988); Spector v. Commissioner, 42 T.C. 110 (1964).

Petitioner argues that her forged signature upon the decision document is sufficient reason for the Court to hold that a "fraud upon the Court" has occurred and that the decision should be vacated. Assuming the decision is vacated, petitioner desires to amend the petition in order to assert an "innocent spouse" defense to the deficiencies due pursuant to the stipulated decision.

In Abatti v. Commissioner, 86 T.C. at 1325, we defined "fraud on the court" as follows:

> Fraud on the court is "only that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner

> its impartial task of adjud[g]ing cases that are presented for adjudication. Fraud, inter partes, without more, should not be a fraud upon the court." <u>Toscano v. Commissioner</u>, 441 F.2d at 933, quoting 7 J. Moore, Federal Practice, par. 60.33 (2d ed. 1970). To prove such fraud, the petitioners must show that an intentional plan of deception designed to improperly influence the Court in its decision has had such an effect on the Court. * * * [Citations omitted.]

The Court of Appeals for the Ninth Circuit, where an appeal in this case would lie, defined "fraud on the court" as "an unconscionable plan or scheme which is designed to improperly influence the court in its decision" or a fraudulent act that "prevents the opposing party from fully and fairly presenting his case". <u>Id.</u>, 859 F.2d at 118-119 (citations omitted).

The limited definition of "fraud upon the court" reflects the policy of putting an end to litigation and serves the important legal and social interest in preserving the finality of judgments. <u>Toscano v. Commissioner</u>, 441 F.2d 930, 934 (9th Cir. 1971), vacating 52 T.C. 295 (1969). A party moving to vacate a final decision of the Tax Court bears a heavy burden of particularized pleading and proof. <u>Drobny v. Commissioner</u>, 113 F.3d 670, 677-678 (7th Cir. 1997), affg. T.C. Memo. 1995-209, and cases cited therein.

In addition to establishing improper conduct, a taxpayer who attempts to set aside a final decision of the Tax Court must also explain how the alleged conduct induced, caused, or had a material effect upon the decision. See <u>Chao v. Commissioner</u>, 92 T.C. 1141, 1144 (1989)(motion to vacate denied because same result would have

been reached even in the absence of the alleged fraud upon the Court). Thus, petitioner must demonstrate, not only that her purported signature was intended to mislead the Court but more importantly that it materially affected the outcome of the case. Drobny v. Commissioner, supra at 678.

Although the parties agree that petitioner did not sign the stipulated decision, petitioner has failed to introduce any evidence upon the issue of whether this had any material effect upon the stipulated decision. Absent the demonstration that the purported deception created an improper influence that affected the Court's decision in this case, there can be no "fraud upon the Court". See Drobny v. Commissioner, supra; Chao v. Commissioner, supra.

Petitioner relies on Toscano v. Commissioner, supra, to support her fraud upon the Court claim. However, the facts of Toscano are distinguishable from those herein. The relevant facts in Toscano are as follows: Josephine Toscano (Josephine Zelasko) moved to vacate a stipulated decision of this Court 15 years after entry upon the grounds that she was not and had not been the wife of Mr. Toscano. Mr. Toscano was not married when he filed what purported to be a joint return, having either forged the signature of Ms. Zelasko as his spouse or coerced her to sign the joint return against her will. Mr. Toscano allegedly perpetrated three frauds. First, he allegedly defrauded the Commissioner by filing a fraudulent joint income tax return claiming he owed less tax than was due by law. Second, he allegedly defrauded Ms. Zelasko by

purporting to make her liable for his taxes. Third, he allegedly committed fraud against the Tax Court when he filed a joint petition with this Court for a redetermination of the deficiency. Pursuant to the parties' stipulation, the Court entered a decision holding Mr. Toscano and Ms. Zelasko jointly liable for deficiencies. The Court of Appeals for the Ninth Circuit vacated the Tax Court's decision and held that Ms. Zelasko, under these circumstances, was entitled to a hearing on her allegations.

In the case before us, it is undisputed that petitioners filed joint income tax returns. Petitioner was aware of respondent's adjustments to the 1975 through 1979 returns, as well as the proceeding before this Court. She knew or certainly should have known that she could be held liable for the tax deficiencies in the event we sustained respondent's adjustments to the 1975-79 returns. And most importantly, she signed the Stipulation of Settled Issues and a Stipulation of Settlement, upon which the stipulated decision document was partially based.

Petitioner has not satisfied her heavy burden of proving that her purported signature on the stipulated decision affected the outcome of the case; in other words, petitioner has failed to prove that a different result might have occurred had the stipulated decision been vacated.

In addition to requesting that the Court vacate the stipulated decision, petitioner requests permission to amend a petition filed 14 years ago in order to assert an "innocent spouse" defense.

Respondent objects, asserting that petitioner is precluded as a matter of law from being able to qualify as an innocent spouse with respect to the three adjustments in this case, i.e., the Investors Mining Program 77-5, the "London Options" futures contracts, and the Six Star Cablevision Management Corp. adjustments.

In opposing petitioner's request to assert an innocent spouse defense for the first time, respondent relies on Russo v. Commissioner, 98 T.C. 28, 31 (1992), in which we denied a taxpayer's motion for leave to file an amendment to the petition to raise an innocent spouse defense. We therein concluded that such a belated amendment would be inconsistent with justice. Rule 41(a).

We agree with respondent's position. Petitioner's innocent spouse claim is clearly untimely. See id.; Bernard v. Commissioner, T.C. Memo. 1995-332.[7] Nevertheless, we are reluctant to rest our decision solely on the belatedness of the claim. See Wilson v. Commissioner, 500 F.2d 645 (2d Cir. 1974), revg. and remanding T.C. Memo. 1973-92. Accordingly, we shall discuss whether petitioner has proven that she might prevail upon her innocent spouse claim with respect to the adjustments determined in the notice of deficiency.

Spouses who file a joint income tax return generally are jointly and severally liable for its accuracy and the tax due, including any additional taxes, interest, or penalties determined

---

[7] Petitioner's untimely late-hour assertion of innocent spouse has many of the earmarks of a proceeding maintained by the taxpayer primarily for delay. See sec. 6673(a)(1).

on audit of the return. Sec. 6013(d)(3). However, pursuant to section 6013(e), a spouse (or innocent spouse) can be relieved of tax liability if that spouse proves: (1) A joint income tax return was filed; (2) the return contained a substantial understatement of tax attributable to grossly erroneous items of the other spouse; (3) in signing the return, the spouse seeking relief did not know, and had no reason to know, of the substantial understatement; and (4) under the circumstances it would be inequitable to hold the spouse seeking relief liable for the understatement. Sec. 6013(e). The spouse seeking relief bears the burden of proving that each of the four elements of the statute has been satisfied, and failure to satisfy any one of the elements will prevent innocent spouse relief. Bokum v. Commissioner, 94 T.C. 126, 138-139 (1990), affd. 992 F.2d 1132 (11th Cir. 1993).

Items of omitted gross income are automatically considered to be grossly erroneous,[8] whereas disallowed deductions must be proven

---

[8] Sec. 6013(e)(2) provides:

For purposes of this subsection, the term "grossly erroneous items" means, with respect to any spouse--

(A) any item of gross income attributable to such spouse which is omitted from gross income, and

(B) any claim of a deduction, credit, or basis by such spouse in an amount for which there is no basis in fact or law.

to be without any basis in fact or law. In the instant case, petitioner omits entirely any reference to her burden of proving that the deductions are grossly erroneous. Moreover, petitioner failed to present facts that, even if proven, would allow her to qualify for innocent spouse relief with respect to any of the adjustments determined in the notice of deficiency.

Petitioner voluntarily signed the March 1987 Stipulation of Settled Issues with respect to the Investors Mining 77-5 transaction, wherein she agreed to a basis of settlement for all the notice of deficiency adjustments relating to such transactions. She testified that she read, reviewed, and subsequently signed the settlement stipulation. Thus, petitioner may not claim innocent spouse status with respect to the Investors Mining Program 77-5 adjustments.

Petitioner also failed to produce evidence at the August 6, 1997, hearing to establish that petitioners' transactions with Gardner Lohmann Limited and Amalgamated Metal Trading Limited were any different from the "London Options" transfers at issue in Glass v. Commissioner, 87 T.C. 1087 (1987). Indeed, petitioner stipulated that she knew that the Court and respondent treated petitioners' transactions as part of the "London Options" tax shelter project.

"London Options" transfers are not "grossly erroneous items" within the meaning of section 6013(e)(2). Russo v. Commissioner, 98 T.C. at 32-33. Because the options transactions involved herein have not been shown to be different from the "London Options"

transactions, petitioner cannot qualify as an innocent spouse with respect to petitioners' "London Options" transfers.

In regard to the final adjustments involved herein, the Six Star Cablevision Management Corp. transactions, petitioner failed to allege and prove that such transactions constitute "grossly erroneous items" within the meaning of section 6013(e)(2). Accordingly, petitioner cannot qualify for innocent spouse relief with respect to the Six Star Cablevision Management Corp. transactions in this case.

Petitioner had an opportunity at the August 6, 1997, hearing to prove that she might prevail on her innocent spouse defense.  She failed to do so.

In sum, we shall deny petitioner's motion for leave to file a motion to vacate decision.

To reflect the foregoing,

An order will be issued denying petitioner's motion for leave to file a motion to vacate decision.