Ben ABATTI and Margaret Abatti et al., Petitioners,

v.

COMMISSIONER OF the INTERNAL REVENUE SERVICE, Respondent.

Nos. 86–7666, 87–7387 to 87–7399.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 10, 1988.

Decided Oct. 7, 1988.

William K. Hogan, San Rafael, Cal., for petitioners.

Gary R. Allen and Bruce R. Ellisen, Tax Div., Dept. of Justice, Washington, D.C., for respondent.

Before WRIGHT and POOLE, Circuit Judges, and BREWSTER *, District Judge.

POOLE, Circuit Judge:

This case presents a difficult question of Tax Court jurisdiction. The Tax Court entered decisions against appellants pursuant to their agreement to be bound by the opinion in five representative lead cases. After the lead cases were reversed on appeal, appellants filed a motion to vacate the decisions in their cases. The Tax Court declined to hear the motion, based in part on its lack of jurisdiction to vacate final decisions, and in part on its conclusion that the decisions were proper even though the lead cases had been overturned. We affirm.

## FACTS AND PROCEEDING BELOW

The fourteen appellants were among a large group of taxpayers who claimed deductions in connection with their investment in five related limited partnerships. The Commissioner disallowed the deductions, and the taxpayers petitioned the Tax Court for redetermination of their resulting deficiencies. Five representative cases were consolidated for trial, and a group of taxpayers, including the fourteen appellants, agreed to be bound by the Tax Court's opinion in the lead case. The "Agreement to Be Bound" (agreement), which was attached to the Commissioner's motion to calendar and consolidate the five lead cases, provided in relevant part:

6. Because the subject cases involve common questions of law and fact with respect to the deductibility of the partnership losses, and in the interest of efficiently resolving all of the cases, the parties agree as follows:

a. That they will file a motion to calendar and consolidate for trial the five cases listed below, each of which involves a petitioner who was a limited partner in one of the five partnerships
. . .

b. That all of the subject cases will be bound by this Court's opinion in the five consolidated cases listed above, and decisions may be entered in accordance therewith.

c. That all of the subject cases except the five consolidated cases listed above will be continued generally until such time as an opinion is issued with respect to the consolidated cases.

The core of this dispute concerns whether appellants were bound by the Tax Court's *opinion* in the lead cases, as the Commissioner urges, or only by a final *decision* in the lead cases, as appellants claim. However, because of the posture of the case at the time of this appeal, we are primarily concerned with jurisdictional issues.

The lead cases were decided against the taxpayers on summary judgment. *Gauntt v. Commissioner*, 82 T.C. 96 (1984). Subsequently, upon motion of the Commissioner, decisions were entered in the trailing cases pursuant to the agreement to be bound. Two of the taxpayers whose cases were among the consolidated lead cases filed appeals, as did 36 of the taxpayers whose cases were decided pursuant to the agreement. These 38 cases were consolidated on appeal, and the Tax Court's decision was reversed in *Heinz v. Commissioner*, 770 F.2d 874 (9th Cir.1985). The court in *Heinz* held that summary judgment, granted on the basis of an issue first raised by the Commissioner in the final round of simultaneous briefs and never briefed by the taxpayers, deprived the taxpayers of a "full and fair opportunity to ventilate the issues involved in the motion." *Id.* at 876. Thirteen additional taxpayers subject to the agreement also appealed, but did so after the original 38 cases had been consolidated. These later appeals were held in abeyance until after *Heinz* was decided, then summarily reversed and remanded for further proceedings in accordance with *Heinz.* The fourteen appellants in this case did not appeal the decisions entered against them

* Honorable Rudi M. Brewster, United States District Judge for the Southern District of California, sitting by designation.

as a result of the opinion issued in the lead cases.

Upon remand of the appealed cases, settlement negotiations commenced, concurrent with discussions in Tax Court on procedures to comply with this circuit's mandate in *Heinz*. It is not clear from the record whether appellants participated in the settlement negotiations, but they appear at least to have been aware of their progress. When the negotiations stalled, appellants filed a motion to vacate the decisions in the *Heinz* cases and in their own. They argued that the agreement required that the decisions be vacated, whether or not the taxpayers had appealed, because it provided that all the taxpayers would be treated the same in accordance with the outcome of the lead cases. Appellants contended that denial of the motion to vacate would deny them equal treatment and would amount to a fraud carried into the court. Finally, they argued that the decisions were void because of this circuit's opinion in the lead cases.

Because Rule 162 of the Tax Court Rules of Practice and Procedure requires leave of the court to file a motion to vacate more than 30 days after a decision is entered, the Tax Court treated the motion as one for leave to file a motion to vacate. The motion was bifurcated with respect to the fourteen appellants, and leave was denied in *Abatti v. Commissioner*, 86 T.C. 1319 (1986). The Tax Court concluded that the agreement to be bound did not affect the rights or duties of appellants to appeal their cases individually and that they had made a conscious decision not to appeal. Accordingly, the Tax Court viewed the decisions as having become final 90 days after entry. *Id.* at 1325. The Tax Court also concluded that there had been no fraud on the court which would give it the power and duty to vacate the final decisions. *Id.* Finally, it held that reversal of the lead case did not void the decisions in appellants' cases, because the Ninth Circuit's decision was "limited to those taxpayers who exercised their right to appeal decisions entered as a result of the agreement." *Id.*

Appellants appeal from the order of denial, raising essentially the same issues argued before the Tax Court. At some point, the lead cases and some of the trailing cases settled, without a final decision having been entered in the lead cases. Appellants claim they attempted to accept the settlement offered to the other taxpayers, but the government refused.

## STANDARD OF REVIEW

We review the Tax Court's denial of leave to file the motion to vacate for abuse of discretion. *Flood v. Commissioner*, 468 F.2d 904 (9th Cir.1972), *cert. denied*, 411 U.S. 906, 93 S.Ct. 1529, 36 L.Ed.2d 195 (1973); *Toscano v. Commissioner*, 441 F.2d 930, 938 (9th Cir.1971) (Byrne, J., dissenting). We will reverse for abuse of discretion only if we have a definite and firm conviction that the Tax Court committed a clear error of judgment in the conclusion it reached. *Fjelstad v. American Honda Motor Co.*, 762 F.2d 1334, 1337 (9th Cir.1985).

The question whether the Tax Court had jurisdiction to grant appellants' motion to vacate is a question of law, which we review *de novo*. *See Toscano*, 441 F.2d at 932 (reviewing *de novo* without explicitly stating the standard of review).

## DISCUSSION

Tax Court decisions become final according to detailed rules set forth at 26 U.S.C. § 7481. A decision may become final by "expiration of the time allowed for filing a notice of appeal, if no such notice has been duly filed within such time." 26 U.S.C. § 7481(a)(1). The notice of appeal must be filed within 90 days after the decision is entered. 26 U.S.C. § 7483. The Tax Court held that its decision was final as to appellants because no appeal was taken within the allotted time.

As a general rule, the Tax Court lacks jurisdiction to vacate a decision once it becomes final. *Lasky v. Commissioner*, 235 F.2d 97 (9th Cir.1956), *aff'd* 352 U.S. 1027, 77 S.Ct. 594, 1 L.Ed.2d 598 (1957). This rule originated when the Tax Court was an

administrative agency and lacked the equitable powers of a court, but it remains valid today because, even as an Article I court, the Tax Court's jurisdiction to grant equitable relief is strictly limited. *Feistman v. Commissioner*, 587 F.2d 941, 943 (9th Cir.1978). *See also Commissioner v. McCoy*, —— U.S. ——, 108 S.Ct. 217, 219, 98 L.Ed.2d 2 (1987) (per curiam) (Tax Court has limited jurisdiction and lacks general equitable powers).

With only two exceptions, the Courts of Appeals have consistently held that once a decision becomes final the Tax Court cannot reopen the case, even for fraud, newly discovered evidence, excusable neglect, or various other grounds which have been urged. *See Toscano*, 441 F.2d at 932 and cases cited therein. The first, and most widely recognized, exception is when the decision was obtained by fraud on the court. *E.g., Toscano*, 441 F.2d at 933; *Kenner v. Commissioner*, 387 F.2d 689, 691 (7th Cir.), *cert. denied*, 393 U.S. 841, 89 S.Ct. 121, 21 L.Ed.2d 112 (1968). The second is when the decision was based on mutual mistake. *Reo Motors, Inc. v. Commissioner*, 219 F.2d 610 (6th Cir.1955); *La Floridienne J. Buttgenbach & Co. v. Commissioner*, 63 F.2d 630 (5th Cir.1933). This circuit has sharply criticized the exception based on mutual mistake and has so far declined to recognize it. *Lasky*, 235 F.2d at 99–100; *Toscano*, 441 F.2d at 932–33; *Feistman*, 587 F.2d at 943.

Appellants have approached the jurisdictional bar to their motion from several different directions. They suggest, alternatively, that there was fraud on the Tax Court, that the decisions never became final because they were tied to the decision in the lead cases by virtue of the agreement to be bound, and that we should expand the exceptions to the finality rules to include this situation. Appellants also argue that we should obviate the jurisdictional issue by making our judgment in *Heinz* applicable to them, even though they did not appeal. We address each of these arguments.

■ Appellants claim the Commissioner perpetrated a fraud on the Tax Court by misleading it into a misconstruction of the agreement to be bound. Although "fraud on the court" is not easily defined, we have said that it may occur when the acts of a party prevent his adversary from fully and fairly presenting his case or defense. *Luttrell v. United States*, 644 F.2d 1274, 1276 (9th Cir.1980) (Rule 60(b)); *Toscano*, 441 F.2d at 934. Appellants maintain that they relied on the agreement in not objecting to entry of decisions against them and in not appealing those decisions. They believed their cases ultimately would be decided in accordance with the outcome of the lead cases, regardless of whether decisions were entered against them in the interim. Ambiguity regarding the agreement's application during the appellate process may well have invited reliance which resulted in appellants being deprived of the opportunity to fully present their case or to have it fully presented for them in the lead case. The difficulty is that we can discern no fraud. Fraud on the court must involve "an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *Toscano*, 441 F.2d at 934, quoting *England v. Doyle*, 281 F.2d 304, 309 (9th Cir.1960). *See also Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 245, 64 S.Ct. 997, 1001, 88 L.Ed. 1250 (1944) (finding a "deliberately planned and carefully executed scheme to defraud"). We do not think it can seriously be argued that the Commissioner committed fraud by urging his construction of the agreement in Tax Court. There is simply no indication of a fraudulent plan or scheme designed to improperly influence the Tax Court, however unfair and devoid of utility the ultimate result might be.

Appellants also argue that the decisions against them did not become final because they were tied to the decision in the lead cases, which never became final. They claim no appeal was necessary to avoid finality or to benefit from reversal of the lead cases. The Commissioner disagrees, maintaining that once the decisions against appellants were entered, the necessity of and time for appeal were not in any way affected by appeal of the lead cases. While we can see no utility in such an

arrangement, we also find nothing which would preclude it. The agreement is silent on the point. Appellants might have been successful had they argued their version of the agreement on a direct and timely appeal from the decisions against them, but their argument does not change the finality of the decisions now. In essence they maintain that the decisions were entered erroneously, contrary to the provisions of the agreement to be bound. Even erroneous decisions become final under 26 U.S.C. § 7481 if no appeal is filed within the allotted time.

■■■ Nor are we persuaded that this situation is sufficiently analogous to "fraud on the court" to warrant an exception to the rule that the Tax Court lacks jurisdiction to vacate a final decision. As we have said, one of the concerns underlying the "fraud on the court" exception is that such fraud prevents the opposing party from fully and fairly presenting his case. *See Luttrell*, 644 F.2d at 1276; *Toscano*, 441 F.2d at 934. Ambiguities in the agreement to be bound may have contributed to appellants' loss of opportunity to be heard on the merits, but their own lack of diligence in the face of that ambiguity was also a contributing factor. They could have sought to resolve the ambiguity by timely appealing from the decisions, as did other taxpayers who were subject to the agreement. Appellants' situation is more analogous to a misunderstanding of Tax Court procedure or instructions than to "fraud on the court," and the former is insufficient to overcome the finality rules. *See Russell v. Commissioner*, 678 F.2d 782, 784 (9th Cir.1982); *Feistman*, 587 F.2d at 943. Exceptions which would allow final decisions to be reconsidered must be construed narrowly in order to preserve the finality of judgments. *Luttrell*, 644 F.2d at 1276. We do not think this situation warrants an exception.

■■■ Finally, we address appellants' argument that this circuit may make its decision in *Heinz* binding upon them, even though they did not appeal. They base this argument on *Bryant v. Technical Research Co.*, 654 F.2d 1337 (9th Cir.1981),

and similar cases in which the courts found exceptions to the general rule that when less than all the co-defendants appeal from an adverse judgment, the non-appealing co-defendants cannot benefit from an appellate decision reversing the judgment. We must reject this argument for several reasons. First, appellants were not parties to the Tax Court decisions appealed from in *Heinz*. The cases they rely on involved parties to the judgment which was appealed, and the decisions rested on the principle that once a timely notice of appeal has been filed from a judgment, the court has jurisdiction to review the entire judgment. *See e.g., Hysell v. Iowa Public Service Co.*, 559 F.2d 468, 476 (8th Cir.1977). That principle has no application here because separate decisions were entered against appellants. Second, the cases relied upon involved joint tortfeasors, cross claimants, or multiple parties asserting rights against a stakeholder. Appellants' respective liabilities are simply not entangled with that of the *Heinz* defendants in the same way as the parties in those cases. Third, the Supreme Court has recently construed Fed.R.App.P. 3(c), which provides that a notice of appeal shall specify the party or parties taking the appeal, as a jurisdictional prerequisite. *Torres v. Oakland Scavenger Co.*, — U.S. —, 108 S.Ct. 2405, 2409, 101 L.Ed.2d 285 (1988). It explained that "failure to name a party in a notice of appeal is more than excusable 'informality;' it constitutes a failure of that party to appeal." *Id.* 108 S.Ct. at 2407. For these reasons, we do not believe our judgment in *Heinz* can be made directly applicable to appellants. It affects their cases only through the agreement to be bound, and appellants lost the opportunity to challenge the Tax Court's interpretation of the agreement when they failed to appeal from the decisions within 90 days of entry.

Appellants make a related argument that the *Heinz* decision necessarily applies to them because reversal of the Tax Court decision was based on denial of due process. In fact, the decision was reversed because summary judgment was entered prematurely, but the distinction is unimportant because the judgment in *Heinz* does

not benefit non-appealing parties regardless of its basis, unless it does so via the agreement to be bound. There is "no general equitable doctrine ... which countenances an exception to the finality of a party's failure to appeal merely because his rights are 'closely interwoven' with those of another party." *Federated Department Stores v. Moitie,* 452 U.S. 394, 400, 101 S.Ct. 2424, 2429, 69 L.Ed.2d 103 (1981).

## CONCLUSION

The decisions against appellants became final after the time for appeal expired. Because the Tax Court lacked jurisdiction to vacate the decisions, it did not abuse its discretion in denying leave to file the motion to vacate. AFFIRMED.