T.C. Memo. 1997-210


UNITED STATES TAX COURT


ROBERT HUNTER GRIDLEY AND BARBARA A. GRIDLEY, ET AL.,[1]
Petitioners <u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 10588-83, 27053-83,          Filed May 6, 1997.
           10931-84, 38757-84,
           13477-87.


<u>Declan J. O'Donnell</u> and <u>Robert Alan Jones</u>,[2] for petitioners.

<u>Henry E. O'Neill</u>, for respondent.

---

[1] Cases of the following petitioners have been consolidated herewith, solely for the purpose of deciding petitioners' motions for summary judgment:  Russell L. Fleer, Sr., and Sally A. Fleer, docket Nos. 27053-83 and 13477-87; and Robert H. and Barbara A. Gridley, docket Nos. 10931-84 and 38757-84.


[2] Although Robert Alan Jones, Esq., is listed as counsel of record in these cases, he did not participate in the filing or prosecuting of the motions that are the subject of this opinion.

MEMORANDUM OPINION

BEGHE, Judge:  These consolidated cases are before the Court on petitioners' Motions for Summary Judgment.  Petitioners contend that they are entitled to entry of decision consistent with the decision entered by the Court in the case of John R. and Maydee L. Thompson, docket No. 19321-83.  As explained in greater detail below, we will deny petitioners' motions.[3]

## Background

These cases are part of a large tax shelter project, currently comprising more than 1,300 cases, arising from the Commissioner's disallowance of interest deductions claimed by participants in investment programs created and administered by Henry Kersting (Kersting group cases).  Due to the large number of Kersting group cases, and the variety of investment programs, the Commissioner and taxpayer representatives selected 14 dockets as test cases to resolve the issues common to all of the cases.[4] In conjunction therewith, and in advance of the trial of the test

---

[3] All section references are to the Internal Revenue Code in effect for the years in issue, unless otherwise indicated.  All Rule references are to the Tax Court Rules of Practice and Procedure.

[4] The 14 dockets consolidated as test cases include Jerry and Patricia A. Dixon, docket No. 9382-83; John R. and E. Maria Cravens, docket Nos. 16900-83 and 15135-84; Ralph J. Rina, docket No. 17640-83; John R. and Maydee L. Thompson, docket Nos. 19321-83, 31236-84 and 30965-85; Hoyt W. and Barbara D. Young, docket Nos. 4201-84, 22783-85, and 30010-85; Robert L. and Carolyn S. DuFresne, docket Nos. 15907-84 and 30979-85; Terry D. and Gloria K. Owens, docket No. 40159-84; and Richard and Fidella Hongsermeier, docket No. 29643-86.

cases, a large number of taxpayers, including petitioners, executed one of two stipulations, entitled Stipulation of Settlement for Tax Shelter Adjustments (piggyback agreements), by which they agreed to be bound by the outcome in the test cases.

The motions for summary judgment filed in these cases are identical in all material respects. We observe, however, that the piggyback agreements relied upon by petitioners, although similar, can be distinguished depending upon whether they were executed and filed with the Court in 1985 or in later years. For the sake of completeness, the two piggyback agreements are set forth in their entirety below.

Robert and Barbara Gridley

Respondent determined deficiencies in and additions to Robert and Barbara Gridley's Federal income taxes for 1978, 1979, 1980, and 1981 based upon the disallowance of Kersting-related interest deductions. Petitioners contested respondent's determinations by filing timely petitions for redetermination assigned docket Nos. 10588-83, 10931-84, and 38757-84.[5]

In May 1985, Brian J. Seery, Esq. (Mr. Seery), entered his appearance in each of the Gridleys' three docketed cases. Shortly thereafter, Mr. Seery executed a Stipulation of Settlement For Tax Shelter Adjustments (the 1985 piggyback

_____

[5] At the time the petitions were filed, the Gridleys resided in San Jose, California.

agreement) on the Gridleys' behalf that was filed with the Court on June 10, 1985.[6]  The 1985 piggyback agreement states:

Stipulation of Settlement for Tax Shelter Adjustments

With respect to all adjustments in respondent's notice of deficiency relating to the Kersting interest deduction tax shelter(s), the parties stipulate to the following terms of settlement:

1.  The term Kersting programs refers to interest expense deductions or other related deductions associated with various programs promoted by Henry Kersting.

2.  The Kersting program deduction adjustments shall be redetermined on the same basis that the same program adjustments are resolved with respect to taxpayers trying the same program adjustments at the June 10, 1985 session of the Court in Honolulu, Hawaii, or such session as these cases may be adjourned or continued to by the Court (hereinafter "TRIED CASE").

3.  All issues involving the Kersting programs shall be resolved as if the petitioner(s) in this case is the same as the taxpayers in the TRIED CASE;

4.  A decision shall be submitted in this case when the decision in the TRIED CASE is entered;

5.  Following entry of the decision in this case, petitioner(s) consents to the assessment and collection of the deficiencies, attributable to the adjustments formulated by reference to the Tax Court's opinion, notwithstanding the restrictions contained in I.R.C. §6213(a);

6.  The petitioner(s) in this case will testify or provide information in any case involving the same tax shelter adjustments, if subpoenaed; and

---

[6] Brian J. Seery, Esq., subsequently withdrew as the Gridleys' counsel.  In August 1992, Declan J. O'Donnell, Esq., filed an entry of appearance on behalf of the Gridleys in each of their cases.

7.  The petitioner(s) in this case consents to the disclosure of all tax returns and tax return information for the purpose of respondent's discovering or submitting evidence in any case involving the same Kersting program adjustments.

The parties agree to this stipulation of settlement.

## Russell and Sally Fleer

Respondent determined deficiencies in and additions to Russell and Sally Fleer's Federal income taxes for 1980 and 1983 based upon the disallowance of Kersting-related interest deductions.  The Fleers contested respondent's determinations by filing timely petitions for redetermination assigned docket Nos. 27053-83 and 13477-87.[7]

In February 1986, Mr. Seery entered his appearance in docket No. 27053-83.  On November 24, 1986, Mr. Seery executed a Stipulation of Settlement For Tax Shelter Adjustments (the 1986 piggyback agreement) on the Fleers' behalf that was filed with the Court on December 1, 1986.[8]  The 1986 piggyback agreement states:

### Stipulation of Settlement for Tax Shelter Adjustments

With respect to all adjustments in respondent's notice of deficiency relating to the Kersting interest deduction tax shelter(s), the parties stipulate to the following terms of settlement:

---

[7] At the time the petitions were filed, the Fleers resided in Thousand Oaks, California.

[8] Brian J. Seery, Esq., subsequently withdrew as the Fleers' counsel in docket No. 27053-83.  On Aug. 17, 1992, Declan J. O'Donnell, Esq., filed an entry of appearance in both of the Fleers' docketed cases.

1. The Kersting interest deduction tax shelter adjustments shall be redetermined on the same basis that the same tax shelter adjustments are resolved with respect to taxpayers trying the same shelter adjustments at the February 9, 1987 session of the Court in Wailuku, Maui, Hawaii, or such session as these cases may be adjourned or continued to by the Court (hereinafter "TRIED CASE").

2. All issues involving the Kersting interest deduction tax shelter(s) shall be resolved as if the petitioner(s) in this case is the same as the taxpayers in the TRIED CASE;

3. A decision shall be submitted in this case when the decision in the TRIED CASE becomes final under I.R.C. § 7481;

4. Following entry of the decision in this case, petitioner(s) consent to the assessment and collection of the deficiencies, attributable to the adjustments formulated by reference to the Tax Court's opinion, notwithstanding the restrictions contained in I.R.C. § 6213(a);

5. The petitioners in this case will testify or provide information in any case involving the same tax shelter adjustments, if subpoenaed; and

6. The petitioners in this case consent to the disclosure of all tax returns and tax return information for the purpose of respondent's discovering or submitting evidence in any case involving the same shelter adjustments.

7. If the Court determines the I.R.C. § 6621(d) penalties are applicable in the test case controlling petitioner'(s') case, then the petitioner(s) concedes that I.R.C. § 6621(d) is applicable to any underpayment of tax determined in their case(s) attributable to the Kersting interest deduction tax shelter(s), if such underpayment exceeds $1,000.00 in any one taxable year.

8. With respect to adjustments in respondent's notice of deficiency relating to additions to the tax under I.R.C. § 6653(a), the parties agree to the following:

> (a) Respondent concedes that the petitioner(s) are not liable for additions to tax under I.R.C. § 6653(a) or § 6653(a)(1) or § 6653(a)(2) for any year prior to the taxable year 1982.
>
> The parties agree to this stipulation of settlement.

On September 21, 1987, the Fleers executed a piggyback agreement identical to the 1986 piggyback agreement and filed the same with the Court in docket No. 13477-87.

Test Case History

On December 11, 1991, following a trial on the merits of the test cases, the Court issued its Memorandum Opinion sustaining virtually all of respondent's determinations in each of the test cases. See Dixon v. Commissioner, T.C. Memo. 1991-614. Thereafter, the Court entered decisions in the test cases in accordance with the Court's opinion.

On June 10, 1992, the Court granted leave and filed respondent's motions to vacate the decisions in the test cases of John Thompson (docket Nos. 19321-83, 31236-84, and 30965-85) and John Cravens (docket Nos. 16900-83 and 15135-84). Respondent stated in her motions to vacate that she believed her lead counsel in the trial of the test cases had, prior to trial, entered into contingent settlement agreements with Thompson and Cravens that were not made known to the Court or to the other parties in the test cases, and that the decisions entered by the Court in those dockets did not accurately reflect the prior agreements. Respondent's motions to vacate requested a hearing

so that the Court could decide whether her trial attorney's prior agreement with Thompson and Cravens had affected the trial of the test cases or the opinion of the Court. On June 22, 1992, the Court granted respondent's motions by vacating and setting aside the decisions that the Court had previously entered in the Thompson and Cravens cases and ordered the parties to file agreed decisions with the Court or otherwise move as appropriate. The Court denied respondent's request for a hearing.

On June 22, 1992, the Court denied respondent's motion to vacate the decision filed in another of the test cases, Ralph J. Rina, docket No. 17640-83, stating:

> The Court has reviewed the testimony of Cravens, the testimony of Thompson, the stipulated facts and stipulated exhibits relating to the Cravenses and the Thompsons, and the exhibits offered through Thompson as a witness. The Court finds that these reviewed items had no material effect on the opinion which the Court filed on December 11, 1991, as that opinion relates to petitioner Rina. If the reviewed items were stricken from the record, the Court would file an opinion in all material respects like the opinion it filed on December 11, 1991 (with the exception of certain portions relating specifically and expressly to the Cravenses or the Thompsons), and the Court's findings, analyses, and conclusions relating to petitioner Rina would remain the same. * * *

On August 25 and August 26, 1992, the Court entered decisions in the Thompson and Cravens dockets consistent with respondent's trial attorney's prior agreements with the taxpayers in those cases. Specifically, the Court entered the following decisions in the Thompson cases:

| Year | Docket No. | Deficiency | Additions to Tax |
|------|-----------|-----------|------------------|
| 1979 | 19321-83  | -0-       | -0-              |
| 1980 | 31326-84  | $15,000   | -0-              |
| 1981 | 30965-85  | 15,000    | -0-              |

The decisions entered in the Thompson cases are now final.

All of the test cases, with the exception of the Thompson and Cravens cases, were appealed to the U.S. Court of Appeals for the Ninth Circuit. In DuFresne v. Commissioner, 26 F.3d 105 (9th Cir. 1994), the Court of Appeals vacated and remanded the decisions entered in the test cases that had been appealed and instructed the Tax Court to conduct an evidentiary hearing "to determine the full extent of the admitted wrong done by the government trial lawyers" in connection with the contingent settlements entered into with Thompson and Cravens. Id. at 107. The Court of Appeals, citing Arizona v. Fulminante, 499 U.S. 279, 309 (1991), directed this Court to consider "whether the extent of misconduct rises to the level of a structural defect voiding the judgment as fundamentally unfair, or whether, despite the government's misconduct, the judgment can be upheld as harmless error." Id. In carrying out this mandate, we also were directed to consider on the merits all motions of intervention filed by parties affected by the Dixon case. Id.[9]

---

[9] The appellate panel in DuFresne v. Commissioner, 26 F.3d 105 (9th Cir. 1994), vacating and remanding Dixon v. Commissioner, T.C. Memo. 1991-614, issued an order stating that the panel would retain jurisdiction over any subsequent appeal.

Upon remand, the Court gave effect to the direction of the Court of Appeals regarding intervention by allowing a number of non-test-case taxpayers who had previously signed stipulations to be bound by the decision in the test cases to participate in the evidentiary hearing. Initially, the case of William D. and Karen S. Booth, docket No. 28950-88, in which Declan J. O'Donnell, Esq. (Mr. O'Donnell), had entered his appearance, was consolidated with other cases of non-test-case taxpayers for purposes of allowing Mr. O'Donnell to participate in the evidentiary hearing. However, at the start of the evidentiary hearing, the Court granted Mr. O'Donnell's motion to sever the Booths' case from the cases consolidated for the evidentiary hearing.[10] Mr. O'Donnell argued that, in light of the theory being asserted in the Booths' case, there was no need for the Booths to participate in the evidentiary hearing.

Petitioners contend that they are entitled to summary judgment (and entry of decision) consistent with the decision of no deficiency and no additions to tax entered in the Thompson case assigned docket No. 19321-83. In particular, petitioners

---

[10] The evidentiary hearing was held at a special trial session of the Court in Los Angeles in May through June 1996. The filing of various posthearing motions, and as yet unresolved disagreements among the participants over posthearing stipulations of fact, have delayed the setting of a schedule for the filing of briefs on the various issues raised by the mandate of the Court of Appeals in DuFresne v. Commissioner, supra.

maintain that the piggyback agreements that they executed provide for entry of decision in their cases once there is a "final decision" in the test cases.  Petitioners assert that they are entitled to entry of decision in their cases consistent with the decision entered in the Thompson case assigned docket No. 19321-83 on the grounds that the latter decision is final and represents the most favorable of the decisions entered in the Thompson and Cravens cases.

Respondent objects to petitioners' Motions for Summary Judgment on the ground that petitioners misinterpret the piggyback agreements.  Specifically, respondent asserts that the piggyback agreements reflect the parties' agreement to be bound by the Court's opinion in the test cases as opposed to the decision entered in a particular test case.

Discussion

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials.  Florida Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988).  Summary judgment upon all or any part of the legal issues in controversy is appropriate "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law."  Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C.

518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); Zaentz v. Commissioner, 90 T.C. 753, 754 (1988); Naftel v. Commissioner, 85 T.C. 527, 529 (1985). The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences will be read in a manner most favorable to the party opposing summary judgment. Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985); Jacklin v. Commissioner, 79 T.C. 340, 344 (1982).

The Court has often relied upon the test case process as an expedient means for resolving tax shelter projects comprising large numbers of cases presenting common questions of law and fact. See Ryback v. Commissioner, 91 T.C. 524 (1988); Clayden v. Commissioner, 90 T.C. 656 (1988); Anderson v. Commissioner, 83 T.C. 898 (1984), affd. without published opinion 846 F.2d 76 (10th Cir. 1988); Sennett v. Commissioner, 69 T.C. 694 (1978). As a practical matter, the effectiveness of the test case process depends in large part upon the agreement of the affected parties to be bound by the outcome in the test case.

A settlement stipulation, such as a stipulation to be bound to a test case, is "in all essential characteristics a mutual contract" that is "entitled to all of the sanctity of any other contract." Saigh v. Commissioner, 26 T.C. 171, 177 (1956); see Fisher v. Commissioner, T.C. Memo. 1994-434; Estate of Satin v. Commissioner, T.C. Memo. 1994-435. In this regard, general

principles of contract law are applied in construing such agreements. Robbins Tire & Rubber Co. v. Commissioner, 52 T.C. 420, 435-436 (1969); Fisher v. Commissioner, supra; Estate of Satin v. Commissioner, supra. Generally, we look within the "four corners" of the agreement to ascertain the intent of the parties. Rink v. Commissioner, 100 T.C. 319 (1993), affd. 47 F.3d 168 (6th Cir. 1995). Where an agreement is ambiguous, the Court may look to extrinsic evidence to determine the parties' intentions. Woods v. Commissioner, 92 T.C. 776 (1989).

Consistent with basic principles of contract law, we begin our analysis with the plain language of the two piggyback agreements. The operative terms of the two piggyback agreements are virtually identical. Paragraph 2 of the 1985 piggyback agreement and paragraph 1 of the 1986 piggyback agreement state that all issues involving Kersting-related interest deductions will be redetermined on the same basis that the same tax shelter adjustments are resolved with respect to the tried cases. Equally important, paragraph 5 of the 1985 piggyback agreement and paragraph 4 of the 1986 piggyback agreement, which state that petitioners waive the restrictions on assessment and collection following entry of decisions in their cases, include the statement that any deficiencies in petitioners' cases will be "formulated by reference to the Tax Court's opinion." Based upon the plain meaning of the language of the piggyback agreements, we hold that the parties agreed to be bound by the Court's

redetermination with respect to Kersting-related interest deductions as set forth in the Court's opinion in the test cases. Because it is now evident that the decisions entered in the Thompson cases are not based upon the Court's opinion in the test cases, we conclude that the Thompson cases do not provide a basis for entry of decision in petitioners' cases.

Petitioners assert that the language in the piggyback agreements referring to the Court's opinion in the test cases is merely a "secondary formula" for arriving at a decision in their cases and that the controlling language is set forth in paragraph 3 of the 1986 piggyback agreement, which states: "A decision shall be submitted in this case when the decision in the TRIED CASE becomes final under I.R.C. sec. 7481". Petitioners' argument is summarized in the following excerpt:

> Wording in the standard form Stipulation in these cases refers to making adjustments in Petitioner's cases as described in an Opinion in the Tried Cases. This wording appears to have been a secondary formula for extending a Decision. It appears to provide the basis for clarifying any ambiguity about how to extend. It is submitted as a matter of contract construction there is no ambiguity in this case which could be aided by reference to any opinion. That opinion has become irrelevant.

> Furthermore, the Dixon et al. Opinion has been vacated by the Ninth Circuit Court of Appeals. A remand has been made for the purpose of fact finding and recommending whether or not that Opinion should be reinstated. It is predictable that any Decision of this Court, (one way or the other), will be appealed back to the Ninth Circuit panel so a final Decision herein is far away. There is no Opinion in the Tried Cases and probably won't be one for a period of years. The wording in the standard form Stipulation should be

discarded not only as not applicable for a lack of ambiguity but, also, because the Opinion has been vacated.

These Petitioner(s) want out of the hunt. They assert that their Stipulation is time-sensitive and now is the time to assert it. * * * There is no ambiguity about [paragraph 3 of the 1986 stipulation] * * *. Thompson 1979 has become final and it fairly represents the net favorable settlement.

Although petitioners recognize that paragraph 3 provides the timing for entry of decision in the piggyback cases, they mistakenly conclude that the final decision in the Thompson case provides the substantive basis for computations for entry of decision in their cases. To the contrary, as indicated above, the piggyback agreements clearly state that the Court's opinion in the test cases will provide the substantive basis for computations for entry of decision in the piggyback cases. Under the circumstances presented, paragraph 3 of the 1986 piggyback agreement requires entry of decision in the piggyback cases once final decisions are obtained in the test cases that currently are on remand to the Court by virtue of the Court of Appeals' opinion and mandate in DuFresne v. Commissioner, 26 F.3d 105 (9th Cir. 1994).

To this point, we have limited our discussion to paragraph 3 of the 1986 piggyback agreement. However, petitioners' reliance on paragraph 3 of the 1986 piggyback agreement highlights the one material difference between the 1985 piggyback agreement and the 1986 piggyback agreement. Unlike the 1986 piggyback agreement,

the 1985 piggyback agreement does not require a <u>final</u> decision in the test cases as a prerequisite for entry of decision in the piggyback cases. Specifically, paragraph 4 of the 1985 piggyback agreement provides for entry of decision in the piggyback cases "when the decision in the TRIED CASE is entered."[11] With this distinction in mind, we note that petitioners' theory for extension of the Thompson decision on the ground that the Thompson decision is a final decision is inapposite with respect to cases governed by the 1985 piggyback agreement. In any event, as previously stated, whether we focus on the 1985 piggyback agreement or on the 1986 piggyback agreement, our analysis of the plain language of both agreements leads to the conclusion that it is the Court's opinion in the test cases, as opposed to the decision entered in any particular test case, that establishes the standard for computations for entry of decision in the piggyback cases.

---

[11] Par. 4 of the 1985 piggyback agreement is akin to the provision governing entry of decision at issue in <u>Abatti v. Commissioner</u>, 86 T.C. 1319 (1986), affd. 859 F.2d 115 (9th Cir. 1988). In this regard, the parties could have moved for entry of decision in the cases subject to the 1985 piggyback agreement when decisions were first entered in the test cases in 1992. However, in light of the subsequent decision of the Court of Appeals for the Ninth Circuit in <u>DuFresne v. Commissioner</u>, 26 F.3d 105 (9th Cir. 1994), entry of decision in cases subject to the 1985 piggyback agreement now must await entry of decision in the test cases following this Court's resolution of the issues raised by the Court of Appeals in its remand of the test cases.

Petitioners' position in these cases is somewhat similar to that taken by the taxpayers in Fisher v. Commissioner, T.C. Memo. 1994-434, and Estate of Satin v. Commissioner, T.C. Memo. 1994-435. In the latter cases, the taxpayers executed piggyback agreements in which they agreed to be bound to the resolution of tax shelter adjustments, whether by litigation or settlement, in three test cases. Of the three test cases, two cases were resolved by way of settlement prior to trial (the settled cases), in which the taxpayers conceded the deficiencies while the Commissioner conceded the additions to tax. In contrast, the remaining test case subsequently was tried on the merits (the tried case), resulting in a decision sustaining the Commissioner's determinations with respect to both the deficiency and additions to tax. Following the conclusion of the tried case, and upon learning for the first time about the settled cases, the taxpayers filed, and the Court granted, motions for entry of decision consistent with the terms of the settled cases. Specifically, the Court found the piggyback agreements to be ambiguous insofar as the agreements bound the taxpayers to cases (the settled cases and the tried case) with divergent results. In holding for the taxpayers, the Court concluded that, in advance of the trial of the tried case, the taxpayers should have been given an opportunity to agree to the terms offered in the settled cases. Because the Commissioner failed to advise the

taxpayers of the settlement prior to the resolution of the tried case, the taxpayers were entitled to entry of decision in their cases consistent with the terms offered in the settled cases.

Although the present cases share some of the characteristics of the Fisher and Estate of Satin cases, there is at least one significant difference. Specifically, the piggyback agreements in the Fisher and Estate of Satin cases expressly stated that the taxpayers agreed to be bound by the resolution of the test cases, "whether by litigation or settlement". In contrast, the piggyback agreements in the present cases do not mention the settlement of a test case as a basis for decision in the piggyback cases. It follows that the settlement of some or all of the test cases, unlike the settlements on which the taxpayers relied in Fisher and Estate of Satin, would not provide a basis for entry of decision in any of the Kersting group cases in which the parties had entered into a piggyback agreement.

Finally, we turn to petitioners' alternative argument that public policy concerns dictate that the Commissioner maintain consistency in settling cases with taxpayers in cases involving common questions of law and fact. Petitioners cite section 6224(c), which provides for consistency in the settlement of cases that are subject to the unified partnership audit and litigation procedures (sections 6221 through 6233) enacted by Congress as part of the Tax Equity and Fiscal Responsibility Act

of 1982 (TEFRA), Pub. L. 97-248, sec. 402(a), 96 Stat. 324, 648, and contend that respondent should be estopped to deny the applicability of section 6224(c) in these cases.

Petitioners have cited no authority for the application of section 6224(c) in cases other than TEFRA partnership proceedings, and we are aware of none. Moreover, the public policy concerns expressed by petitioners provide no basis for disregarding the piggyback agreements, which bind the parties to the Court's redetermination with respect to Kersting-related interest deductions, as set forth in the Court's opinion in the test cases. Petitioners are required to remain "in the hunt" with all the other taxpayers in the Kersting group cases and abide the outcome of the evidentiary hearing and resolution of the various issues raised by the Court of Appeals for the Ninth Circuit in its remand of the test cases.

In sum, in the absence of any language in either of the piggyback agreements that reasonably can be interpreted as allowing petitioners to select a particular test case decision as the basis for the decision to be entered in their cases, we will deny petitioners' motions for summary judgment.

To reflect the foregoing,

<u>Orders will be issued</u>

<u>denying petitioners' Motions for</u>

<u>Summary Judgment</u>.