T.C. Memo. 2001-84

UNITED STATES TAX COURT

CHIH H. AND CHU F. CHU, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24861-97.                    Filed April 9, 2001.

Chih H. and Chu F. Chu, pro sese.

<u>David R. Jojola</u>, for respondent.

MEMORANDUM OPINION

CHIECHI, <u>Judge</u>:  This case is before the Court on petition-
ers' motion for leave to file motion to vacate decision (peti-
tioners' motion).  Respondent filed an objection to petitioners'
motion and a declaration by David R. Jojola (Mr. Jojola) in
support of that objection.  Petitioners filed a reply to respon-
dent's objection (petitioners' reply).  We shall deny petition-

ers' motion.

Background

On October 29, 1997, respondent issued a notice of deficiency (notice) to petitioners that determined the following deficiencies in, and fraud penalties under section 6663(a)[1] on, petitioners' Federal income tax (tax):

| Year | Deficiency | Fraud Penalty Under Sec. 6663(a) |
|------|-----------|----------------------------------|
| 1991 | $18,508 | $13,881 |
| 1992 | 40,931 | 30,698 |
| 1993 | 70,662 | 52,997 |

On December 29, 1997, petitioners timely filed pro sese a petition. This case was calendared for trial at the Court's trial session in Los Angeles, California, that commenced on February 8, 1999.

On February 2, 1999, Robert H. Appert (Mr. Appert) entered an appearance on behalf of petitioners. On February 8, 1999, the parties filed a stipulation of settled issues, a first supplemental stipulation of settled issues, and a second supplemental stipulation of settled issues (collectively, stipulations of settled issues). Each of those stipulations was signed on February 6, 1999, by Mr. Appert on behalf of petitioners as well as by each petitioner and by Mr. Jojola on behalf of respondent. On March 11, 1999, the parties submitted to the Court a stipu-

_____

[1]All section references are to the Internal Revenue Code in effect at relevant times. All Rule references are to the Tax Court Rules of Practice and Procedure.

lated decision document (stipulated decision document) that was signed on March 10, 1999, by Mr. Appert on behalf of petitioners and by a representative of respondent and that reflected the agreement of the parties as set forth in the stipulations of settled issues.

On March 15, 1999, the Court entered a decision in this case pursuant to the agreement of the parties as reflected in the stipulated decision document[2] that petitioners are not liable for the fraud penalty under section 6663(a) for any of the years at issue and that they are liable for deficiencies in, and accuracy-related penalties under section 6662(a) on, petitioners' tax, as follows:

| Year | Deficiency | Fraud Penalty Under Sec. 6663(a) | Accuracy-Related Penalty Under Sec. 6662(a) |
|------|-----------|-----------------------------------|---------------------------------------------|
| 1991 | $2,973 | None | $595 |
| 1992 | 6,008 | None | 1,202 |
| 1993 | 20,379 | None | 4,076 |

Discussion

The Court's decision in this case was entered pursuant to the agreement of the parties on March 15, 1999. No notice of appeal or timely motion to vacate or revise the decision was filed in this case, see sec. 7483 and Rule 162, and the decision herein became final on June 13, 1999, see sec. 7481(a)(1); Fed. R. App. P. 13(a).

---

[2]On Mar. 26, 1999, after the decision in this case was entered, Mr. Appert filed a motion to withdraw as attorney of record for petitioners in this case. On Apr. 22, 1999, the Court granted Mr. Appert's motion.

Petitioners' motion was filed on February 12, 2001, almost two years after the Court entered the decision in this case and 20 months after that decision became final. Once a decision becomes final, the Court may vacate it only in narrowly circumscribed situations, such as where the decision was obtained through fraud on the Court, see Abatti v. Commissioner, 859 F.2d 115, 118 (9th Cir. 1988), affg. 86 T.C. 1319 (1986), or where the decision is void or a legal nullity for lack of this Court's jurisdiction over either the subject matter or the party, see Billingsley v. Commissioner, 868 F.2d 1081, 1084-1085 (9th Cir. 1989); Abeles v. Commissioner, 90 T.C. 103, 105-106 (1988).[3]

The Court of Appeals for the Ninth Circuit has defined the phrase "fraud on the court" to be "'an unconscionable plan or scheme which is designed to improperly influence the court in its decision.'" Toscano v. Commissioner, 441 F.2d 930, 934 (9th Cir. 1971)(quoting England v. Doyle, 281 F.2d 304, 309 (9th Cir. 1960)), vacating 52 T.C. 295 (1969); see Abatti v. Commissioner,

---

[3]The Court of Appeals for the Fifth Circuit has indicated that in extraordinary circumstances this Court has the power in its discretion to vacate and correct a final decision where it is based on a mutual mistake of fact. See La Floridienne J. Buttgenbach & Co. v. Commissioner, 63 F.2d 630 (5th Cir. 1933). The Court of Appeals for the Ninth Circuit, to which an appeal in this case would normally lie, does not recognize this Court's power to vacate and correct a final decision where it is based on a mutual mistake of fact. See Abatti v. Commissioner, 859 F.2d 115, 118 (9th Cir. 1988), affg. 86 T.C. 1319 (1986); Lasky v. Commissioner, 235 F.2d 97, 99-100 (9th Cir. 1956), affd. per curiam 352 U.S. 1027 (1957).

<u>supra</u>.  In order to prove fraud on the Court, petitioners have the burden of establishing that "an intentional plan of deception designed to improperly influence the Court in its decision has had such an effect on the Court."  <u>Abatti v. Commissioner</u>, 86 T.C. 1319, 1325 (1986), affd. 859 F.2d 115 (9th Cir. 1988); see <u>Drobny v. Commissioner</u>, 113 F.3d 670, 677-678 (7th Cir. 1997), affg. T.C. Memo. 1995-209, and cases cited therein.

The Court has carefully reviewed petitioners' motion and petitioners' reply.  Petitioners' motion states in pertinent part:

1)    IRS hold the document (from the Bank Deposits) and made the copies of receipts back to 1995 of taxable year 1991-1993; But, never exchange to taxpayer or CPA even requested for years to see what the results from and run out of the appealing time, jumped to the conclusion which no one would believe it * * *.

\*         \*         \*         \*         \*         \*         \*

3)    It was found IRS made mistakes for taxable year of 1990 by double taxing on the petitioners because IRS always using the worksheets to jot down the numbers which could be partially reported and IRS examiners never recreated on the official forms to show or exchange to the taxpayers.

4)    IRS eventually released the data in Dec. of 1998 and petitioners hired the attorney Robert H. Appert to check and recreate the official 1040 forms for taxable year of 1991-1993 as the reference to the Tax Court.

5)    The counsel for Petitioners did not attend the conference meeting on time held by judge Carolyn Chiechi, nor recreated the 1040/Schedule C official forms as all the receipts, cancelled checks were available.

6)  The motion to withdraw the counsel of petitioners was ordered from the court because Robert with CPA background charging $200/hr and did not prepare the 1040 forms either as the supporting document to the court and both parties.

7)  From the IRS booklets; When all the data are available, the professionals require only hours to fill out 1040 forms; Actually, back to 1995, when auditor Jennifer was in CPA's office to examine the taxable year of 1991; The CPA took only half hour to accomplish the 1040 forms with schedule C to auditor for information when all the receipts and cancelled checks were copied by the auditor.

8)  The reason to use official 1040 forms was easy to communicate with the other party and should any number in doubt, the taxpayers can have receipts or cancelled check or bank statement to prove it. To prevent IRS examiners to hide or delete items or made partial report to jump to the conclusion misleading the judgments; It must have the 1040 forms to be as the reference.  It does not matter which 1040 forms to be used.

9)  The petitioner has been in electronics industry for 16 years and being laid off from July 1991 due to the Eaton Corp. closed completely in Los Angeles; Since the petitioners have no idea of accounting/book keeping, every year must have the CPA/tax specialist to prepare the 1040 forms.

10) In 1992, petitioner could not find the right job after being laid off For almost one year starting to do import/trade business using the Savings or IRA funds to purchase the goods.  The Cost of goods in the year 1992 was Around $54,000 plus the operation expenses of startup this new field of business.  Definitely, the operating expenses (Schedule C) for this new trade business was far more than the profits of selling the products.  It does not matter which official forms (1040 EZ or 1040A) to be used; The results of the income loss (profits) should be the same.

11) It does not matter what method to be used to analysis the new startup business; The bank saving dropping from 1991 to 1993 indicated the seeds

money being used up for the import business start-up, and in 1992 & 1993, even could not afford to hire the part time bookkeeper. Mrs. Chu majoring in Music helped to just put all the receipts aside without knowing how to organize it. But, everyone knows without investing or buying the seeds to fertilize it, the fruits will not be there years after. In other words, no one would expect the profits (Fruits) in the first few years of startup a new business (seeds). [Reproduced literally.]

Petitioners' reply states in pertinent part:

12) This Court has jurisdiction to vacate a final decision if the decision of the Court was obtained by fraud on the Court. Partially report the COG is the act of fraud, which would influence the judgment. Treating petitioners unfairly or differently will be justified by the court as the act of fraud or one kind of discriminating the petitioners had no tax/accounting background or knowledge.

        *       *       *       *       *       *       *

14) The definition of Fraud is an act of deliberate deception with the design of securing something by taking unfair advantage of another-New International Dictionary; A deliberate deception for unfair or unlawful gain-American Heritage Dictionary. Respondent is a tax professional, hold the documents retrieved from the bank without exchange to the petitioners for four years (1995-1999) and jump to the decision without providing the appeal meeting for petitioners to explain until tax solving date requested by the congressman to release the files to the petitioners to check.

15) To prove such fraud, petitioners (No Tax background) hired the CPA and attorney to analyze and prepare the detailed 1040 forms and schedule C for easy understanding without eliminating or modified the numbers where the banks statements or receipts/cancelled checks were all available. The respondent (Professional tax expert) claimed in his office the preparation of 1040 forms need one more year and he could not find help to prepare it based on the receipts/cancelled checks and bank

transaction statement. Actually, respondent spent only two hours to put the numbers into the 1040 forms (See Exhibit A), but, hold the progress of checking the taxable years of 1992 and 1993. Because respondent knowing that petitioner lost the main job in 1992 and started to import the different small quantities of samples of audio devices from April of 1992. Respondent deliberately hold the progress of reviewing the expenses of start-up business, which was about two weeks from Feb. 8, 1999. (Deadline to turn in the paper to the court). The petitioners hired the attorney to continue to review and prepare the 1040 form and schedule C which estimated only need four hours required, but, not successful and on Feb. 6th, 1999, petitioners being told that counsel could do it at the second phase; First phase he did not care about what respondent did. This was the main reason the petitioner had the motion to withdraw the counsel.

    \*      \*      \*      \*      \*      \*      \*

17) The legal counsel was hired to make the progress of reviewing the COGs of 1992, 1993 and few expenses items which respondent deliberately hold or partially report in his stipulation report. During the time of hiring, not only the counsel was late in the meeting called by the judge, but, he did not make any progress report to petitioners until Feb. 6th, 1999 (Two days away from the deadline set by the court); Besides, the petitioner (spouse) had the operation of the chest and under daily radiation treatment of cancer disease; Under such mentally pressure, Robert forced the petitioners to sign the incompletely stipulation report by saying he can fix it at the second phase. As the Fraud is an act; only if the professional made it, later can be caught what did the respondent make. During the stage of professional's intention to design the scheme, it was hard to get the evidence. As Fraud is an act using professional knowledge to take advantage of the non-professionals by treating the taxpayer unfairly, differently or not just. As people say that non-professionals might use tangible weapons to rob the bank to get money illegally; But, professionals can use intangible way (their knowledge to

write the makeup figures) to take the money from the taxpayer pockets illegally.  As the professional always use the rules in favor of his misconduct as the fraud activity, he would never tell anyone by holding such case for how many years would dismiss (drop) the case; Since by holding the case, IRS put the interest on it, and when IRS owed petitioner money, also, holding the check for the taxable year of 1990 without releasing by making the excuses.  As there are two different issues.

18) Because of the following reasons, the settlement was never reached.

A) The deficiency of taxable year 1991, 1992 and 1993 came out without giving the petitioners the documents describing where the figures from or how it was calculated.  The only paper received was last week the exhibits of respondent letter, which had lots of expenses, items being deleted or partially report.  In other words, The stipulation issues were not only vague, incomplete but, very confusing to the court if the judge knowing in 1992 and 1993 the petitioners had no main job and using up the savings or even the IRA fund as emergency seed money used to start up the new trade business; The tax deficiency in 1992 (Petitioner lost the main job) was calculated twice as higher as in the 1991 ($2,973.00 + $595) which petitioner still had the main job.  In 1993 (the second year of the new start-up trade business), the deficiency was calculated eight times ($20,379 + $4076) higher than the 1991.  It would make the judge very confused by just looking at the above figures made-up by the respondent deliberately to deceive the court judgment.

(B) Before the deadline (Feb. 2, 1999); Judge agreed the withdrawal of petitioners counsel. Because no progress report and even negligence of the meeting called by the judge.

(C) The petitioner (Spouse) was under cancer treatment and mentally in the bad shape.  Petitioners have to totally trust and rely on the counsel hired with the $200/hr rate.

(D) Under above stress conditions, the petition-
ers' counsel talked into the petitioners to sign
the incomplete stipulation issues made up by the
respondent at the last minute on Feb. 6th, 1999 by
saying he could do the second phase work or he
would not represent the petitioners on the Feb.
8th, 1999 in the court.

(E) In the morning (About 9:00 A.M.) of Feb. 8th,
1999; Petitioner did turn in the above situation
paper and requested the Judge to consider the COGs
of 1992, 1993 and few expenses items which respon-
dent deliberately drop or cut off in respondent
issues two days ago.  Showing the stipulations has
the figures made up by the respondent except the
taxable year of 1991.  Starting from the end of
January 1999; The respondent just hold the pro-
gress of reviewing the taxable year of 1992 and
1993; Do not mention to exchange the documents or
provide the opportunity for petitioners until Feb.
6th, 1999.  All the papers were prepared for last
minutes signatures.  This was the way the profes-
sional designed the trap to take advantage of the
taxpayers unfairly by giving petitioners no oppor-
tunity at all saying the court need the signatures
to turn in.  The petitioners did not sign the
stipulations of facts at the first place because
the respondent did not provide the complete ex-
penses report when reviewing the taxable year of
1991.  I believe the laws give the taxpayers to
know how the deficiency being calculated and based
on.  Respondent hold or hide the documentations
and provided no chance for petitioners to explain
or exchange are not only unfair, but, trying to
stop the court to review what figures respondent
made up deliberately to take advantage of the
petitioners is obviously seen.  If the respondent
did not make up the figures or untruth report to
the court, respondent should not be afraid of any
questions to be asked by the Judge during the next
investigation.  [Reproduced literally.]

We find petitioners' motion and petitioners' reply to be

vague and confusing.  However, those filings do not appear to

suggest or argue that we had no jurisdiction over the subject

matter or petitioners in this case.  Nor do petitioners' motion and petitioners' reply appear to suggest or argue that there was any corruption of the Court.  Assuming arguendo that petitioners are contending in petitioners' motion and petitioners' reply that some sort of fraud was perpetrated on the Court, on the instant record, we reject any such contention.  That record establishes that:  Petitioners retained legal counsel shortly before the scheduled trial in this case was to begin; after retaining legal counsel, the parties reached a basis of settlement and memorialized that settlement in the stipulations of settled issues which were signed by petitioners' counsel, Mr. Appert, on behalf of petitioners as well as by each petitioner and by Mr. Jojola on behalf of respondent; the Court entered a decision in this case pursuant to the agreement of the parties as shown in the stipulated decision document[4] that was signed by Mr. Appert on behalf of petitioners and by a representative of respondent and that reflected the stipulations of settled issues;[5] and petitioners did not appeal the decision in this case or timely move to vacate

---

[4]It is noteworthy that the stipulated decision document reflects a substantial concession by respondent regarding the determinations in the notice.

[5]Contrary to the allegations in petitioners' motion and petitioners' reply, petitioners' counsel, Mr. Appert, did not file a motion to withdraw as attorney of record for petitioners in this case until Mar. 26, 1999, after the decision in this case was entered on Mar. 15, 1999.  The Court granted that motion on Apr. 22, 1999.

or revise that decision.

Based on our review of the entire record before us, we find that petitioners have failed to show that the decision entered in this case is the result of fraud on the Court or any other situation that warrants our exercise of our discretion under Rule 162 to grant petitioners' motion.  Based on that record, we find that petitioners have failed to persuade us that we should grant them leave to file a motion to vacate the decision.

To reflect the foregoing,

<u>An order will be issued denying petitioners' motion for leave to file motion to vacate decision</u>.