T.C. Memo. 2021-121

UNITED STATES TAX COURT

ALBERT G. HILL, III, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 794-18.                              Filed October 25, 2021.

<u>Ajay Gupta</u>, <u>Guinevere M. Moore</u>, and <u>Elizabeth A. Yablonicky</u>, for

petitioner.

<u>Ashley Vaughan Targac</u>, <u>William Walter Kiessling</u>, and <u>William Benjamin</u>

<u>McClendon</u>, for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  Currently before the Court is petitioner's motion to rede-

termine interest under section 7481(c) and Rule 261.[1]  In 2012 petitioner remitted

_____

[1]Unless otherwise indicated, all statutory references are to the Internal Rev-
enue Code (Code) in effect at all relevant times, and all Rule references are to the

[*2] to the Internal Revenue Service (IRS or respondent) a check for $10,263,750, designating the remittance as a "deposit" to be applied toward his anticipated gift tax liability for 2011.  In a stipulated decision entered July 19, 2019, we determined a gift tax deficiency of $6,790,000 for 2011 and no overpayment for any year.  After our decision became final, the IRS sent petitioner a check for $3,473,750, the amount of his excess deposit, but without any interest.

Respondent concedes that petitioner is allowed interest on the excess deposit, and he computes the interest due as $218,122, calculated using the Federal short-term rate.  See sec. 6603(d)(4) (cross-referring to section 6621(b)).  But respondent contends that we lack jurisdiction to redetermine interest under section 7481(c), which permits reopening a case for this purpose only where "the Tax Court finds under section 6512(b) that the taxpayer has made an overpayment."  In respondent's view, petitioner made a deposit, not a payment of tax, and our decision did not determine any "overpayment."

Disavowing his repeated designations of the remittance as a "deposit," petitioner contends that the $10,263,750 check constituted a "payment" of gift tax.  And he insists that our decision in effect determined an "overpayment," because it

Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

[*3] included the parties' below-the-line stipulation that petitioner had a "pre-payment credit" of $10,263,750 that would be "applied to * * * [his] tax year 2011 gift tax liability." From these premises petitioner concludes, not only that we have jurisdiction to redetermine interest, but also that he is due interest of $1,267,323, the sum calculated using the Federal short-term rate plus three percentage points, the interest rate specified for "overpayments." See sec. 6621(a)(1). Concluding that respondent has the better argument, we will deny petitioner's motion.

## Background

The following facts are derived from the pleadings, the parties' motion papers, and the exhibits attached thereto. Petitioner resided in Georgia when the petition was filed.

More than a decade ago petitioner became embroiled in litigation with his father and other family members in the U.S. District Court for the Northern District of Texas. Oversimplifying greatly, this litigation involved the division of wealth ultimately derived from the Hunt Oil Co. On May 13, 2010, the parties executed a "Global Settlement and Mutual Release Agreement" (settlement) resolving this dispute.

To effectuate the settlement the court directed, in a November 2010 order, that petitioner assign a multi-million-dollar asset to trusts for the benefit of his

[*4] children.  This asset took the form of an agreement entitling petitioner to receive from his father, during 2011-2015, installment payments in the aggregate amount of $30,675,000.  On May 13, 2011, petitioner executed the documents necessary to effectuate this assignment.

The parties to the settlement understood that petitioner's assignment of this asset could generate a gift tax liability.  On February 23, 2012, a check for $10,263,750 was issued from the registry of the District Court payable to the United States Treasury "c/o Andy Burnett," petitioner's representative.  The check was hand-delivered to the IRS office in Atlanta, Georgia.

On February 28, 2012, Mr. Burnett followed up with a letter to that office, noting the litigation background and explaining that the check was being remitted "with respect to the potential [gift] tax * * * for the period ended December 31, 2011."  Mr. Burnett explained that no gift tax return had yet been prepared or filed, so "the potential gift tax is undetermined."  He designated the remittance as a "deposit" and stated that "the taxpayers intend for this deposit to satisfy the requirements of [s]ection 6603(a)."

In a letter dated August 19, 2013, the IRS acknowledged receipt of the check but indicated that no corresponding tax return had yet been received.  Pending receipt of a return, the IRS credited the $10,263,750 to petitioner's "Form 709 ac-

[*5] count for the tax period ended December 31, 2011." The letter urged petitioner to submit a gift tax return as soon as possible, stating that the IRS would then "apply the credit to the tax you owe and refund any overpayment."

In a reply dated August 23, 2013, Mr. Burnett again referred to the $10,263,750 remittance as a "deposit." He explained that, upon further analysis, petitioner's representatives had concluded that this deposit "should be applied to 2012 rather than 2011." He noted that "the potential gift tax is undetermined as the taxpayers have not prepared and filed gift tax returns for 2012."

On March 26, 2014, petitioner submitted to the IRS a Form 709, United States Gift (and Generation-Skipping Transfer) Tax Return, for 2012. The return reported a gift tax liability of zero, taking the position that the gift (if any) was incomplete at year-end 2012 because "these matters were still being litigated and appealed. All funds are currently being held in the court registry and are in dispute." In an accompanying cover letter Mr. Burnett reiterated that the "deposit [of $10,263,750] is the result of a check issued from the registry of the Court in accordance with a settlement reached by the parties." He stated that "said amount, which was applied to 2012 from 2011, should be refunded to the taxpayer."

In substantially identical letters dated June 11 and July 22, 2014, petitioner's attorneys requested "return of his deposit in the amount of $10,263,750." They

**[\*6]** noted that this "remittance was submitted with a letter which designated the full $10,263,750 as a deposit under 26 U.S.C. § 6603." They demanded immediate return of the deposit "as authorized by 26 U.S.C. § 6603(c)." That section, captioned "Return of Deposit," provides that, unless collection of the tax is in jeopardy, "the Secretary shall return to the taxpayer any amount of the deposit (to the extent not used for a payment of tax) which the taxpayer requests in writing." The attorneys stated that petitioner was making this request under "the procedures set out in Section 6 of Revenue Procedure 2005-18." That section governs "request[s] for return of a deposit made pursuant to section 6603." Rev. Proc. 2005-18, sec. 6, 2005-1 C.B. 798, 800.

On August 22, 2014, the IRS acknowledged petitioner's requests but stated that it needed more information before it could return the deposit. It first sought additional facts concerning the potential underlying gift tax liability, noting that, under section 6603(c), "the IRS must determine whether our repayment of this money will place in jeopardy the payment of any [F]ederal tax." Second, because the check was issued from the registry of the District Court, the IRS asked whether "any repayment should be made to the District Court from which the payment originally came." If so, the letter requested "the appropriate account (or case) numbers and specific court officials to whom any repayment should be directed."

**[*7]** In a February 4, 2015, response to this communication, petitioner's attorney again requested immediate return of "the $10,263,750 deposit." The letter stated that this sum was properly returnable to petitioner, not the District Court, because "the funds used for the deposit were released by the court for the purposes of making a deposit towards anticipated gift tax liability." And the letter stated that, given petitioner's financial position, collection of any tax could not possibly be in jeopardy. Finally, petitioner's attorney insisted that the character of the remittance was unambiguous: "To be clear, * * * the IRS has no basis for asserting that the $10,263,750 constitutes a payment [of tax], as opposed to a deposit." As support for that proposition he cited Mr. Burnett's February 2012 letter accompanying the remittance, which "stat[ed] that the funds were submitted as a deposit pursuant to IRC § 6603."

On July 30, 2015, the IRS notified petitioner that it had commenced a gift tax examination. The revenue agent (RA) subsequently requested authorization "to contact the U.S. District Court directly for information necessary to * * * [secure] return of the outstanding check deposit." The RA stated his belief that, "based on Revenue Procedure [20]05-18, I can authorize its release," but asked whether "the District Court should also send in a request for the return of funds in order to authorize the release." By letter dated October 20, 2016, the RA asked petitioner's

[*8] attorneys to "look into * * * [this] question and respond in writing." There is no evidence in the record that petitioner's representatives ever did so.

The gift tax examination centered on two questions: whether petitioner's assignment of the installment obligation constituted a taxable gift and (if so) whether the gift was made in 2010 (when the settlement was consummated), in 2011 (when petitioner executed the assignment), or in 2015 (when funds were actually transferred to the children's trusts). By letter dated December 14, 2016, the RA explained that the IRS would likely assert all three positions in the alternative. But because there would be no gift tax liability for 2012, the year to which petitioner had most recently designated the $10,263,750 deposit, the RA indicated that petitioner "must request in writing that the funds be applied to a different tax year in accordance with Revenue Procedure 2005-18." Otherwise, "upon closure of the 2012 gift tax return, the [s]ection 6603 deposit will be returned [to] the U.S. District Court * * * registry."

The IRS issued petitioner a 30-day letter proposing alternative gift tax deficiencies for 2010, 2011, and 2015. In a protest filed February 13, 2017, petitioner recited that he had "deposited $10,263,750 with the IRS, pursuant to IRC § 6603(a), for the potential gift tax liability on his 2011 gift tax return," but that he had subsequently redirected the deposit to 2012, for which no gift tax liability

[*9] existed. The protest accordingly requested, "pursuant to Revenue Procedure 2005-18, * * * that the IRS apply the deposit Mr. Hill made under IRC § 6603 to any potential gift tax liability for the 2010, 2011, and 2015 tax years." (The IRS subsequently transferred the deposit as a prepayment credit to petitioner's account for 2010, the earliest year for which it proposed an adjustment.) In October 2017 the IRS sent petitioner a notice of deficiency determining a gift tax deficiency in excess of $10 million for 2010 or (alternatively) for 2011 or 2015. Petitioner timely petitioned this Court in January 2018.

On May 31, 2019, the parties filed a stipulation of settled issues resolving all issues in the case. They thereby agreed that petitioner had made a taxable gift in 2011; that the amount of this gift was $24,400,000 (taking into account the time value of money and other variables); that petitioner had no gift tax liability for 2010 or 2015; and that petitioner was liable for no additions to tax. They agreed that "[t]he deficiency in this case will be computed without reference to an advance payment of $10,263,750 that was made on February 28, 2012."

The parties subsequently submitted, and we entered on July 19, 2019, a stipulated decision determining a gift tax deficiency of $6,790,000 for 2011, no deficiencies for 2010 and 2015, and no additions to tax. Our decision did not find an overpayment of tax for any year. The decision included several "below-the-line"

[*10] stipulations. The parties there agreed that "interest will accrue * * * as provided by law on the deficiency due from petitioner," and that "interest will be credited or paid as provided by law on any overpayment in tax due to petitioner." The parties further stipulated:

> [T]here is a prepayment credit in the amount of $10,263,750.00 which payment was made on February 28, 2012 and was credited to petitioner's tax year 2010 gift tax liability. It is stipulated that the prepayment credit in the amount of $10,263,750.00 will be reversed for petitioner's tax year 2010 and applied to petitioner's tax year 2011 gift tax liability. It is further stipulated that the deficiency for the taxable year 2011 is computed without considering the prepayment credit of $10,263,750.00.

On January 7, 2020, the IRS issued petitioner a check for $3,473,750. That sum represents the difference between petitioner's remittance ($10,263,750) and the deficiency we determined ($6,790,000). The check thus included no interest.

On August 14, 2020, petitioner filed a motion to redetermine interest pursuant to Rule 261. This motion was filed within one year of the date on which our decision became final. See sec. 7481(a); Rule 261(a)(2). In his motion petitioner alleges that the $10,263,750 check "was intended as a deposit pursuant to I.R.C. § 6603(a)" and that the "deposit was to be directed to potential gift tax imposed for tax year 2011." Petitioner contends that the IRS "erred in failing to refund the interest that accrued pursuant to I.R.C. § 6603(d)(1) during the pendency that the funds were deposited with the United States Treasury." Petitioner alleges that the

[*11] interest due on his excess deposit is $1,267,323, calculated using the interest rate payable on overpayments of tax.  Under section 6621(a)(1), the "overpayment rate" for non-corporate taxpayers is the Federal short-term rate plus three percentage points.

In his response to the motion respondent concedes that petitioner "is allowed interest on the $3,473,750 excess deposit that was returned to him," agreeing that interest is due "from the date of the remittance, February 28, 2012, until the date interest is paid."  However, because petitioner remitted a deposit, respondent calculates interest on the excess deposit using the Federal short-term rate--without a three-percentage-point "bump"--as specified in section 6603(d)(4).  Respondent computes the interest due (through September 30, 2021) as $218,122, rather than $1,267,323 as alleged by petitioner.

As a corollary of this argument, however, respondent contends that we lack jurisdiction to redetermine interest.  Section 7481(c) grants us jurisdiction to re-open a case for this purpose, notwithstanding the finality of our decision, only where "the Tax Court finds under section 6512(b) that the taxpayer has made an overpayment."  Sec. 7481(c)(2)(B).  According to respondent, petitioner made no "payment" of gift tax for any year, but only a deposit to stop the running of inter-

**[*12]** est.  And our decision in this case did not determine, for any year, an

"overpayment" of tax within the meaning of section 6512(b).

Discussion

A.    Statutory Background

  1.    Deposits

Taxpayers long ago adopted the practice of making deposits with the IRS,

generally with a view to stopping the running of interest.  This practice was ini-

tially conducted under a series of IRS revenue procedures.  See, e.g., Rev. Proc.

64-13, sec. 4, 1964-1 C.B. (Part 1) 674, 675.  These procedures "distinguished

between payments made in satisfaction of a tax liability and 'deposits in the nature

of a cash bond.'"  Rev. Proc. 84-58, sec. 2.03, 1984-2 C.B. 501, 501.  The IRS

consistently ruled that "[a] deposit in the nature of a cash bond is not a payment of

tax, is not subject to a claim for credit or refund, and, if returned to the taxpayer,

does not bear interest."  Ibid.; see also Rev. Proc. 82-51, 1982-2 C.B. 839.

To clarify the law on this subject, and to address taxpayer complaints that

interest should be paid on returned deposits, Congress in 2004 added to the Code

section 6603, captioned "Deposits Made to Suspend Running of Interest on Poten-

tial Underpayments, etc."  See American Jobs Creation Act of 2004, Pub. L. No.

108-357, sec. 842, 118 Stat. at 1598.  Section 6603(a) is captioned "Authority To

[*13] Make Deposits Other Than as Payment of Tax." It provides that a taxpayer "may make a cash deposit with the Secretary which may be used * * * to pay any tax * * * which has not been assessed at the time of the deposit." Unless the Secretary determines that "collection of tax is in jeopardy," he is required to "return to the taxpayer any amount of the deposit (to the extent not used for a payment of tax) which the taxpayer requests in writing." Sec. 6603(c).

Section 6603(d) is captioned "Payment of Interest." It generally provides that, "[f]or purposes of section 6611 (relating to interest on overpayments), except as provided in paragraph (4), a deposit which is returned to a taxpayer shall be treated as a payment of tax for any period to the extent (and only to the extent) attributable to a disputable tax for such period." Sec. 6603(d)(1). A "disputable tax" means "the amount of tax specified at the time of the deposit as the taxpayer's reasonable estimate of the maximum amount of any tax attributable to disputable items." Sec. 6603(d)(2)(A). Of central importance to this case, section 6603(d)(4) specifies that "[t]he rate of interest under this subsection shall be the Federal short-term rate determined under section 6621(b), compounded daily."

The legislative history of section 6603 confirms Congress' understanding that "[a] deposit is not a payment of tax prior to the time the deposited amount is used to pay a tax." H.R. Rept. No. 108-755, at 649 (2004), 2004 U.S.C.C.A.N.

[*14] 1341, 1698.  The revenue procedure now governing this subject emphasizes the same point.  See Rev. Proc. 2005-18, sec. 6.01, 2005-1 C.B. at 800 ("A deposit made pursuant to section 6603 is not subject to a claim for credit or refund as an overpayment until the deposit is applied by the Service as payment of an assessed tax of the taxpayer.").  If a deposit returned to the taxpayer "is attributable to a disputable tax, interest determined using the Federal short-term rate provided under section 6621(b) * * * will be included."  Id. sec. 6.03, 2005-1 C.B. at 800.

Respondent agrees that petitioner's $10,263,750 deposit was "attributable to a disputable tax," viz., his gift tax liability for 2011.  See sec. 6603(d)(1) and (2)(A).  Respondent thus concedes that petitioner, under section 6603(d)(1), is entitled to interest on his excess deposit and has calculated the amount of interest using the Federal short-term rate, as specified in section 6603(d)(4).

2.      Motions To Redetermine Interest

The Tax Court is a court of limited jurisdiction and may exercise jurisdiction only to the extent authorized by Congress.  See sec. 7442; Ruesch v. Commissioner, 154 T.C. 289, 294 (2020).  We are "without authority to enlarge upon that statutory grant."  Kasper v. Commissioner, 137 T.C. 37, 40 (2011).  Petitioner's motion requires that we decide whether we have jurisdiction, at this stage of the proceedings, to redetermine interest.

**[\*15]** We generally lack jurisdiction over a case once our decision in the case has become final within the meaning of section 7481. See Stewart v. Commissioner, 127 T.C. 109, 112 (2006); Abatti v. Commissioner, 86 T.C. 1319, 1323 (1986), aff'd, 859 F.2d 115 (9th Cir. 1988). There are exceptions to this rule, allowing us to revise an otherwise-final decision, e.g., for clerical error or fraud on the Court. See Stewart, 127 T.C. at 112 n.3. But these exceptions are narrowly construed.

In 1988 Congress added a statutory exception to this finality principle by adding to section 7481 a new subsection (c), captioned "Jurisdiction Over Interest Determinations." See Technical and Miscellaneous Revenue Act of 1988, Pub. L. No. 100-647, sec. 6246(a), 102 Stat. at 3751. In 1997 Congress amended section 7481(c) to clarify that it applied both to underpayment and to overpayment interest. See Taxpayer Relief Act of 1997, Pub. L. No. 105-34, sec. 1452(a), 111 Stat. at 1054.

Section 7481(c)(1) currently provides that, notwithstanding section 7481(a):

> [I]f, within 1 year after the date the decision of the Tax Court becomes final * * *, the taxpayer files a motion in the Tax Court for a redetermination of the amount of interest involved, then the Tax Court may reopen the case solely to determine whether the taxpayer has made an overpayment of such interest or the Secretary has made an underpayment of such interest and the amount thereof.

Section 7481(c)(2), captioned "Cases to Which this Subsection Applies," specifies only two categories of cases that may be reopened in this way. The first category,

[*16] irrelevant here, is that where the IRS has made a tax assessment that includes

interest. See sec. 7481(c)(2)(A). The second category is that where "the Tax

Court finds under section 6512(b) that the taxpayer has made an overpayment."

See sec. 7481(c)(2)(B); see also Estate of Smith v. Commissioner, 429 F.3d 533,

538 (5th Cir. 2005), vacating 123 T.C. 15 (2004).

"A proceeding to redetermine interest * * * on an overpayment determined

under Code section 6512(b) shall be commenced by filing a motion with the

Court." Rule 261(a)(1). The motion papers must include a statement that "the

Court has determined under Code section 6512(b) that the petitioner has made an

overpayment," a "copy of the Court's decision which determined the overpay-

ment," and a schedule setting forth "each payment made by the petitioner in

respect of which the overpayment was determined." Rule 261(b)(3). In order for

section 7481(c)(2) to apply in a case such as this, "this Court must have determined

that there is * * * an overpayment pursuant to section 6512(b)." Exxon Mobil

Corp. & Affiliated Cos. v. Commissioner, 136 T.C. 99, 111 (2011), aff'd, 689 F.3d

191 (2d Cir. 2012).

B.    Analysis

As applicable here, section 7481(c)(2)(B) permits reopening to redetermine

interest only if "the Tax Court finds under section 6512(b) that the taxpayer has

[*17] made an overpayment."  Section 6512(b)(1) generally provides that, "if the

Tax Court finds that there is no deficiency and further finds that the taxpayer has

made an overpayment of * * * tax * * *, or finds that there is a deficiency but that

the taxpayer has made an overpayment of such tax, the Tax Court shall have

jurisdiction to determine the amount of such overpayment[.]"

Our decision in this case was entered on July 19, 2019.  That decision does

not "find[] that the taxpayer has made an overpayment" for any year.  Sec.

6512(b)(1).  Rather, it decides that "there is a deficiency in gift tax due from peti-

tioner for the calendar year 2011 in the amount of $6,790,000," and it decides that

"there are no deficiencies in gift tax due from, nor overpayments due to, petitioner

for the calendar years 2010 and 2015."  Because our decision did not find that

petitioner had made an overpayment, we lack jurisdiction over his motion.[2]

---

[2]Petitioner does not contend (and could not plausibly contend) that section 7481(c) permits reopening to decide--in the first instance--whether there was an overpayment of tax.  The overpayment must previously have been determined (just as the existence or absence of a deficiency would have been determined) in our decision.  See sec. 6512(b)(1) (granting jurisdiction to determine an overpayment "if the Tax Court finds that there is no deficiency and further finds that the taxpayer has made an overpayment").  In order to reopen a case under section 7481(c), "the decision with respect to the overpayment * * * must be final."  Exxon Mobil Corp., 136 T.C. at 111.  The statute permits us to reopen that final decision "solely to determine whether the taxpayer has made an overpayment of such interest," not to determine whether the decision itself should be revised to find an overpayment. See Estate of Smith v. Commissioner, 429 F.3d at 538 ("Section 7481 * * * allows

**[\*18]** Petitioner's theory of the case is that we have jurisdiction because our decision in substance determined an overpayment. Relying on "below-the-line" stipulations by the parties in the decision document, petitioner contends that this Court in effect determined an overpayment for 2011. This argument is unpersuasive for at least two reasons. First, a below-the-line stipulation evidences only an agreement between the parties. It is called a "below-the-line" stipulation because it appears "below the Judge's signature." See Smith v. Commissioner, T.C. Memo. 2009-33, 97 T.C.M. (CCH) 1134, 1136 (distinguishing a below-the-line stipulation from the decision line, which "determin[es] deficiencies, additions to tax, and penalties"). Such a stipulation does not constitute a finding by the Court. See sec. 7481(c)(2)(B) (permitting reopening if "the Tax Court finds * * * that the taxpayer has made an overpayment" (emphasis added)). Second, the parties themselves, in their below-the-line stipulations, do not refer to any "overpayment." Rather, they "stipulate[] that the deficiency for the taxable year 2011 is computed without considering the prepayment credit of $10,263,750." (Emphasis added.)

This Court could not possibly have determined an "overpayment" for 2011 because petitioner had not made a payment of tax for any relevant year at the time

---

the Tax Court to determine any interest overpayment or underpayment after the Tax Court has determined that there is an overpayment of tax[.]" (Emphasis added.)).

[*19] our decision was entered. When remitting the $10,263,750 check to the IRS, petitioner's representative explicitly designated it as a "deposit" and stated that "the taxpayers intend for this deposit to satisfy the requirements of [s]ection 6603(a)." "A deposit is not a payment of tax prior to the time the deposited amount is used to pay a tax." H.R. Rept. No. 108-755, supra at 649; Rev. Proc. 2005-18, sec. 6.01 (same).

Indeed, the February 2012 letter that accompanied the remittance informed the IRS that no gift tax return had yet been prepared or filed. As a result, "the potential gift tax [wa]s undetermined" at that time. That being so, it is difficult to see how the remittance could have been a tax "payment."

In subsequent references to the $10,263,750 check, petitioner's representatives uniformly characterized that remittance as a "deposit." When seeking return of the deposit in 2014, his lawyers represented that he had "designated the full $10,263,750 as a deposit under 26 U.S.C. § 6603" and demanded return of the deposit "as authorized by 26 U.S.C. § 6603(c)." They represented that they were making this request under "the procedures set out in * * * Revenue Procedure 2005-18," which governs "request[s] for return of a deposit." Rev. Proc. 2005-18, sec. 6.

[*20] Petitioner alleged in his petition, by way of defense to the additions to tax, that he had "deposited $10,263,750 with the IRS while the legal effect of the transfer was being analyzed by [his] professional advisers." In his motion to redetermine interest petitioner alleges that the $10,263,750 check "was intended as a deposit pursuant to I.R.C. § 6603(a)" and that the IRS "erred in failing to refund the interest that accrued pursuant to I.R.C. § 6603(d)(1)."

Designating this remittance as a "deposit" provided petitioner with an important benefit, as his advisers surely knew: He could demand the immediate return of his deposit at any time. See sec. 6603(c). Had petitioner made an "advance payment," he could have secured return of the funds only by pursuing the IRS' formal refund process, which could be lengthy. See Ford Motor Co. v. United States, 768 F.3d 580, 588 (6th Cir. 2014) (noting that taxpayers before enactment of section 6603 faced the dilemma of "immediate access without interest, or interest without immediate access").[3]

---

[3]Petitioner errs in relying on Ford Motor Co. in support of his position. Interpreting the now-obsolete provisions of Rev. Proc. 84-58, supra, the court held that a taxpayer may choose to have a deposit converted into an advance payment. 768 F.3d at 593. That case does not help petitioner, because at no time did he instruct the IRS to convert his deposit to a payment.

[*21] In short, petitioner initially designated the $10,263,750 check as a "deposit" as opposed to a "payment." And he consistently referred to it as a "deposit" until October 16, 2020, when he filed his reply to the IRS response to his motion to redetermine interest. That response explained that the status of the remittance as a "deposit" had two adverse consequences for petitioner: (1) this Court lacks jurisdiction to reopen the case and (2) interest on the excess deposit, while concededly due, must be computed at the Federal short-term rate, without the three-percentage-point "bump" applicable to interest on "overpayments." See sec. 6621(a)(1). Petitioner now contends that his deposit really was (or eventually became) a payment.

In advancing this eleventh-hour change of strategy, petitioner admits that he initially designated the remittance as a "deposit." He characterizes subsequent communications between his representatives and the IRS as "anything but a model of clarity." In essence, he asserts that the IRS at some point--"in all likelihood on receipt but in any event no later than August 2013"--unilaterally converted the deposit into a "payment" of tax.

We are not persuaded. For starters, petitioner cites no authority for the proposition (and we know of none) that the IRS can unilaterally overrule a taxpayer's designation of a remittance as a "deposit." The statute specifically provides that a

[*22] taxpayer "may make a cash deposit," sec. 6603(a), and it supplies no authorization for overruling a taxpayer's designation. The statute provides that "[s]uch a deposit shall be made in such manner as the Secretary shall prescribe." Ibid. The IRS has prescribed "the manner" of making deposits in Rev. Proc. 2005-18, supra. Nothing in that pronouncement remotely suggests that the IRS can unilaterally overrule a taxpayer's designation of a remittance as a "deposit." Cf. id. sec. 4.03, 4.04, and 4.05, 2005-1 C.B. at 800 (specifying circumstances in which an undesignated remittance will be treated as a payment of tax).

In any event, we find no evidence that the IRS ever overruled petitioner's designation. As of December 15, 2014, the transcript of his 2012 gift tax account showed a credit balance of $10,263,750. This reflected the return he filed in June 2014 (showing zero liability and enclosing no payment) and the remittance of $10,263,750 posted on February 28, 2012. In its August 2014 letter acknowledging petitioner's requests that the deposit be returned, the IRS stated that it needed more information, including "whether our repayment of this money will place in jeopardy the payment of any [F]ederal tax." This statement plainly refers to section 6603(c), which provides that a deposit shall be returned "[e]xcept in a case where the Secretary determines that collection of tax is in jeopardy."

[*23] In July 2015 the RA requested authorization from petitioner "to contact the U.S. District Court directly for information necessary to * * * [secure] return of the outstanding check deposit." The RA stated his belief that, "based on Revenue Procedure [20]05-18, I can authorize its release." But he asked whether "the District Court should also send in a request for the return of funds."

In a December 2016 letter the RA noted the absence of a proposed adjustment for 2012, the year to which petitioner had most recently designated the deposit. He accordingly indicated that petitioner "must request in writing that the funds be applied to a different tax year in accordance with Revenue Procedure 2005-18." Otherwise, "upon closure of the 2012 gift tax return, the [s]ection 6603 deposit will be returned [to] the U.S. District Court * * * registry."

Petitioner contends that the IRS converted the deposit into a payment by "refusing to return the deposit." But the IRS did not refuse to return the deposit. It initially voiced uncertainty as to whether the deposit should be returned to petitioner or to the District Court. The IRS asked for account numbers or court officials "to whom any repayment should be directed," but petitioner does not allege that he ever supplied that information. The RA subsequently requested authorization to contact the District Court directly regarding return of the deposit, but petitioner does not allege that he ever supplied such authorization. When the RA offered

[*24] petitioner the choice of designating the deposit to a year other than 2012 or having the deposit returned to the District Court, petitioner opted for the former. In his protest he explicitly requested, "pursuant to Revenue Procedure 2005-18, * * * that the IRS apply the deposit * * * under IRC § 6603 to any potential gift tax liability for the 2010, 2011, and 2015 tax years."[4]

Petitioner cites several documents, including the stipulation of settled issues, in which IRS personnel or the parties jointly referred to the $10,263,750 remittance as an "advance payment" or simply as a "payment." The notice of deficiency, for example, includes a notation that "the deficiency * * * does not take into account a payment of $10,263,750.00 made on 2/28/2012." We conclude that the word "payment," when appearing in these contexts, was not being used in a technical sense. (If the IRS had regarded the remittance as a tax payment, the notice of deficiency would presumably have offset that amount against the adjustments, which it did not do.) In any event, we conclude that such statements cannot over-

---

[4]Had the IRS in fact refused to return the deposit, petitioner's proper course of action would have been to file suit in District Court, see 28 U.S.C. sec. 1346(a) (2018), or the U.S. Court of Federal Claims, see id. sec. 1491(a).

[*25] ride petitioner's unambiguous designation of the remittance as a "deposit" and respondent's repeated references to it as such.[5]

Petitioner likewise errs in relying on the parties' below-the-line stipulation that "interest will be credited or paid * * * on any overpayment in tax due to petitioner." The parties also stipulated that "interest will accrue and be assessed * * * on the deficiency due from petitioner." Both statements, which appear in many below-the-line stipulations, were pure boilerplate here. No interest could possibly accrue on the deficiency because the deficiency was smaller than the deposit. And our decision did not in fact find "any overpayment in tax due to petitioner."

Finally, petitioner appears to argue that his $10,263,750 remittance could not have been a "deposit" because Mr. Burnett's February 2012 letter, while designating the check as a deposit, "neither identified any 'disputable items' underlying [the 2010] tax liability nor set forth petitioner's reasonable basis for disputing it." See sec. 6603(d)(2)(A) (defining "disputable tax" as the amount of tax specified at

---

[5]Indeed, if petitioner were correct that his $10,263,750 deposit was (in technical terms) a payment of tax for 2011 rather than a deposit, he would appear to be allowed no interest whatever under section 6611 because he filed no gift tax return for 2011. See sec. 6611(b)(3) (providing that, in the case of a delinquent return, "no interest shall be allowed or paid for any day before the date on which the return is filed").

[*26] the time of the deposit as being "attributable to disputable items"). This argument does not seem helpful to petitioner's cause. Whether a remittance is "attributable to a disputable tax" is not relevant in determining whether a remittance is a "deposit" under section 6603(a). It is relevant only in determining whether the taxpayer is entitled to interest on his deposit. See sec. 6603(d)(1) (providing that a taxpayer is entitled to interest on a deposit returned to him "to the extent (and only to the extent) attributable to a disputable tax for such period"). If Mr. Burnett's letter (contrary to respondent's concession) actually neglected to identify any "disputable item," petitioner would not be entitled to any interest at all. See sec. 6603(d)(1), (2), (4).[6]

To implement the foregoing,

<u>An order will be issued denying petitioner's motion to redetermine interest</u>.

---

[6]While conceding that interest is due petitioner, respondent denies that he erred in failing to pay interest because "it does not appear that petitioner has made a formal claim for this interest other than the Motion filed in this case." We assume that, if petitioner makes a formal claim for interest computed as required by section 6603(d)(4), respondent will honor his concession.